NORTHERN TRUST BANK, Adm'r of the Estate of Seymour Sholder, Deceased, Plaintiff-Appellant, v. JAMES B. CARL *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—88—1498

Opinion filed June 29, 1990.

Stephen D. Phillips, of John G. Phillips & Associates, of Chicago (Carol Wilczynski, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Richard H. Donohue, Michael A. Pollard, and Christopher T. Hurley, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

This appeal follows a jury verdict for defendants in an action for personal injuries arising out of an automobile accident. Plaintiff raises the following issues on appeal: whether defendants' counsel's comments in closing argument were inflammatory; whether defendants' counsel violated his own motion *in limine*, prejudicing plaintiff; whether defendants' counsel's conduct during trial was so improper as to mandate a new trial; and whether the trial judge improperly permitted testimony relating to plaintiff's alleged contributory negligence and prior medical history.

We affirm.

On November 5, 1979, plaintiff Seymour Sholder filed a one-count negligence action against Mobil Chemical Corporation (Mobil) and James Carl for injuries, including "permanent cardiac" injuries, Sholder received in a collision involving his automobile and a Mobil truck driven by Carl in August 1979. The collision occurred near Skokie Valley Hospital, where plaintiff was a staff physician. At the time of the occurrence, Carl was making a delivery to the hospital.

In July 1980, Sholder suffered a heart attack and eventually underwent heart bypass surgery. Sholder previously had suffered a heart attack in 1965.

On August 27, 1986, Sholder died.

The matter eventually proceeded to trial in January 1988. Plaintiff's theory was that Sholder's July 1980 heart attack was due to the collision which occurred in August 1979. At the conclusion of trial, the jury returned a verdict in defendants' favor.

This appeal followed.

We summarize other pertinent facts below only to the extent it is necessary to do so in the disposition of the issues presented.

OPINION

Plaintiff first argues that defendants' counsel made numerous im-

proper comments in his closing argument. Specifically, plaintiff identifies nine instances of improper comment in defendants' counsel's closing argument.

■ Plaintiff contends that counsel improperly referred to Carl as the "poor truck driver," compounding the impropriety by so referring to Carl three other times.

The record indicates that the trial judge sustained plaintiff's counsel's objection to the first use of the phrase "poor truck driver" by defendants' counsel, struck the phrase from the record, and instructed the jury to disregard it. Plaintiff's counsel did not object to the other three uses of the phrase by defendants' counsel. The record indicates, as to his third mention of the "poor truck driver," defendants' counsel corrected himself and apologized for using the phrase. We note, further, that at the time of the first objection to his use of the phrase, defendants' counsel explained that he did not intend the use of the word "poor" in terms of the truck driver's financial status.

After considering the statements complained of within the context of the argument made by defendants' counsel, we conclude that counsel's use of the phrase "poor truck driver" was inadvertent, was not designed to mislead the jury, and did not substantially prejudice the plaintiff's case.

Plaintiff contends defendants' counsel vouched for the credibility of Carl, citing counsel's statements that he did not think Carl was lying in his testimony and that counsel believed Carl. Plaintiff also argues defendants' counsel implied plaintiff had manufactured the lawsuit by stating that, if companies like Mobil used "spotters" to help guide truck drivers, those companies would risk liability "like in this case."

While it is improper for an attorney to vouch for the credibility of his client (see 107 Ill. 2d R. 7—106(c)(4)) or to argue the lawsuit was manufactured to explain a sustained injury (see *Green v. Cook County Hospital* (1987), 156 Ill. App. 3d 826, 510 N.E.2d 3), we cannot conclude, after carefully reviewing the record in its entirety, that the statements were more than harmless error and we do not believe they provide a basis to disturb the jury's verdict.

During closing argument, defendants' counsel read a brief portion of text, apparently from the transcript, of a medical record from which one of the witnesses at trial had previously read. Plaintiff now claims defendants' counsel's reading from the transcript was improper.

Plaintiff has cited no authority in this State for the proposition that it is improper *per se* for counsel to read to the jury portions of

the trial transcript. We note that it is within the discretion of the trial judge to permit counsel to refresh a witness' memory by reading portions of the trial transcript. (*Reed v. Northwestern Publishing Co.* (1988), 124 Ill. 2d 495, 530 N.E.2d 474.) As to plaintiff's contention here, the record indicates defendants' counsel intended to read from that portion of the transcript, which contained the witness' own reading from a medical report, to insure accuracy. We cannot conclude such was reversible error.

Following a hearing out of the jury's presence in which the trial judge considered whether it would be proper to read from the transcript, defendants' counsel apologized to the jury for the frequent interruptions. Plaintiff's counsel now claims that the apology gave the jury the false impression that plaintiff's counsel was acting improperly or attempting to hide something from the jury.

We do not agree the apology to the jury constitutes reversible error because the record indicates the trial judge thereafter instructed that plaintiff's counsel could object as often as he desired.

Plaintiff also asserts counsel's reference to elements of damages in plaintiff's case as "fruit salad," counsel's statement that he was "shocked" by the amount of money plaintiff claimed as damages, and counsel's mention that Carl had never been in court before were improper comments. However, because the record indicates plaintiff failed to object to any of those statements at trial, we decline to address whether those issues require reversal, as plaintiff has failed to properly preserve the issues for review. See *Friedland v. Allis Chalmers* (1987), 159 Ill. App. 3d 1, 511 N.E.2d 1199.

Plaintiff next argues defendants' counsel violated his own motion *in limine* which precluded plaintiff from introducing evidence of lost wages and medical bills.

■■ ■ Defendants' counsel filed a motion *in limine* to preclude plaintiff from presenting evidence regarding a claim for lost wages. The motion stated plaintiff had not claimed resulting monetary loss from the accident, had not indicated such loss in answers to interrogatories, and, further, plaintiff's counsel had indicated, during plaintiff's deposition, that no such claim would be made. The motion also sought to preclude any claim for medical damages because plaintiff failed to provide defendants with bills for medical treatment.

The record indicates the trial judge granted the motion upon plaintiff's counsel's acknowledgment that plaintiff would make no claim for lost wages for the time between the accident and the time of plaintiff's death, as well as the acknowledgment that counsel would not introduce any medical bills.

On appeal, plaintiff argues that defendants' counsel made improper reference during closing argument to the fact that plaintiff introduced no evidence of damages in the form of lost wages or medical expenses. Specifically, plaintiff cites the following portion of the record containing comments of defendants' counsel:

"Lastly, damages. [Plaintiff's counsel] made some reference in his argument to 'Wouldn't you think they would have put this witness on the stand or wouldn't you think they would put that witness on the stand?' Have you seen one medical bill put into evidence in this case? Not an [sic] one.

Is there one dollar's worth of damages that's been introduced in this case, ladies and gentleman? No. Have you seen any evidence of lost income? [Plaintiff's counsel] says, 'Well, I think he had to slow down and Mr. Sholder said he couldn't work as often as he used to after the accident.' Where are his income tax returns? Where are his office records?

Is there any proof in this case that this guy lost one dollar as a result of this accident? The answer is no. Where is that evidence? Where are the medical bills for this heart attack and this bypass surgery? What do we have here?

Fruit salad is what we lawyers tend to call this stuff. Fruit salad. No wonder why we have a question mark here. It's really fruit salad.

Aggravation. This guy had the disease. He would have had the bypass surgery anyway.

Disability. Where's the evidence of disability in this case? Where is the evidence that this guy earned—I don't know, $20,000 one year and $15,000 the next or whatever he earned?

[PLAINTIFF'S COUNSEL]: I object to this, your Honor. This claim has not been presented.

[THE COURT]: Objection to the amount of the money, sir.

\* \* \*

Did he have angina after the accident? Yes, he did. Did he have it before the accident? Yes, he did. What was the cause for the angina? The guy's arteriosclerosis.

Where are the bills? Not only do I have to argue, I have to look and see what I was supposed to see. There's a burden. The law imposes a burden on you and me and us as lawyers in a court; and that is, when you come into court and sue a case, you have a right to file a lawsuit and ask for damages and the defendants have a right to come in and defend them.

But when you file a lawsuit as a plaintiff you have to carry

the ball, and you have to prove it by what they call competent evidence, believable evidence, admissible evidence about the accident and how it happened, about the injury and about the damages. And in this case, if the evidence on all three of those areas is extremely weak, then I'd be very surprised."

Plaintiff argues that defendants' counsel's comments regarding the failure to present medical bills and evidence of monetary loss as a result of the accident were violations of the motion *in limine* which confused the jury and prejudiced plaintiff. In support of that argument, plaintiff points out that, during deliberations, the jury sent a note to the judge asking for help in defining the term "injury."

In order for the violation of an *in limine* order to serve as the basis for a new trial, the order must be specific in its prohibitions, and violations must be clear. (*Schaffner v. Chicago & North Western Transportation Co.* (1987), 161 Ill. App. 3d 742, 515 N.E.2d 298.) And, where a violation is found to exist, a new trial may follow only where the violation has prejudiced the plaintiff or denied him a fair trial. See *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825.

The record indicates plaintiff's counsel made no objection to the comments regarding medical bills. As to comments regarding lost wages, the record does indicate that an objection was made. The trial judge sustained the objection as to the amount of money stated in conjunction with counsel's comment.

Here, through the motion *in limine*, defendants' counsel intended to insure that plaintiff did not present a claim for lost wages or medical bills at trial, where there was no indication such claims would be made. From the record, however, it appears defendants' counsel used his success on the motion as a sword as well as a shield by taking opportunity to point out the failure to produce evidence of those claims, as well as others. We certainly cannot approve of such tactics. Nevertheless, for purposes of determining whether a new trial is warranted, the relevant inquiry is confined to examining the extent to which any violation of the motion *in limine* prejudiced plaintiff. It is difficult to see how such prejudice could have occurred in the instant case where there is no indication that plaintiff intended to claim lost wages or medical bills as damages. Further, the record indicates the jury's inquiry as to the meaning of "injury" related only to whether that term encompassed both physical and mental injury.

■ Plaintiff next argues defendants' counsel engaged in six other specific acts of improper conduct during trial. We consider each of those alleged improprieties in turn.

Plaintiff asserts defendants' counsel questioned plaintiff's treating physician, William Fishman, as to whether plaintiff had prescribed nitroglycerin for himself when no evidence of that fact existed.

We do not agree with plaintiff's assertion. The record indicates that Fishman testified that Sholder did, at sometime prior to the accident, take nitroglycerin on his own.

Plaintiff argues defendants' counsel injected his own personal beliefs about the veracity of two witnesses when he accused one of the witnesses of being "cute," and stated to the other: "I'd like you to answer my questions[,] *** I'm the lawyer here."

Neither complaint rises to the level of reversible error. As to the first comment, the record indicates plaintiff's counsel objected to the comment and the trial judge properly instructed the jury to disregard the comment. The second comment does not interject counsel's personal belief but was, instead, a legitimate effort to have the witness answer the question posed.

Plaintiff argues the repeated references by defendants' counsel to plaintiff's automobile as a "Mercedes Benz" were improper because they constituted an attempt to use wealth or poverty as an issue in the case.

First, the record indicates plaintiff's automobile was, in fact, a Mercedes Benz model. Moreover, plaintiff's counsel did not object at trial to that description of the automobile. We do not believe that, when the record is read in its entirety, the use of the term can constitute reversible error.

Plaintiff contends defendants' counsel improperly recited the contents of an inadmissible police report when questioning the only witness who directly supported plaintiff's case, Bruce Mazurkiewicz, the director of security at Skokie Valley Hospital.

The record indicates that the trial judge properly sustained plaintiff's counsel's objection to the testimony, and we do not conclude the reference was prejudicial.

Plaintiff contends that during the redirect examination of Fishman, it was improper for defendants' counsel to ask Fishman to look at the medical records upon which Fishman was being questioned. Plaintiff contends the implication was that Fishman was testifying untruthfully.

We do not agree with plaintiff's assessment. The record indicates that Fishman was answering plaintiff's counsel's questions based on the content of medical records before him without actually looking at the records. Defendants' counsel's objection, rather than being construed as improper, can be fairly construed as suggesting that Fish-

man continue to refer to the records for purposes of accuracy in his testimony.

Last, plaintiff contends it was improper to allow defendants'. counsel to impeach Fishman with a question which plaintiff claims was "vague, misleading, and improper in form." Plaintiff argues that the question reflected on the credibility of plaintiff's treating physician. The question posed was:

> "In your opinion, sir, based upon your expertise and training in this area, is there any way that you or another qualified cardiologist could testify as to whether or not the July, 1980, myocardial infarction was in any way related to the August, 1979 accident?"

We do not conclude the question was an improper one in form and further conclude that it was proper for impeachment purposes.

■ Plaintiff's final major contention is that defendants' counsel improperly introduced testimony relating to plaintiff's alleged contributory negligence and family medical history. Specifically, plaintiff notes defendants' counsel elicited testimony concerning Sholder's failure to have a stress test and certain laboratory work performed, contrary to his physician's recommendation. Additionally, plaintiff notes counsel elicited testimony that Sholder failed to follow the diet recommended by his physician and may have written himself prescriptions for nitroglycerin. Last, plaintiff notes counsel inquired into Sholder's history of coronary artery disease.

We do not view the elicitation of the above testimony as improper. The questions complained of merely related to defendants' theory at trial: that the proximate cause of Sholder's heart attack in July 1980 was his preexisting arteriosclerotic disease and was not related to the automobile accident occurring 11 months earlier, in August 1979.

For the above reasons, we find no basis to disturb the jury's verdict.

Affirmed.

MURRAY and GORDON, JJ., concur.