Lisa (Whitis) KJERSTAD, Deb Tireman
and Taunia Hindman, Plaintiffs and
Appellees,

v.

RAVELLETTE PUBLICATIONS, INC.,
d/b/a Pennington County Courant,
Defendant,

and

Les Ravellette, Defendant and Appellant.

Nos. 18124, 18134.

Supreme Court of South Dakota.

Considered on Briefs Sept. 2, 1993.

Decided April 20, 1994.

Rehearing Denied May 24, 1994.

Mark F. Marshall, Michael M. Hickey, Patrick Duffy of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellees.

Rick Johnson of Johnson, Eklund, Nicholson, Dougherty & Abourezk, Gregory, for defendant and appellant.

BRADSHAW, Circuit Judge.

Defendant Les Ravellette (Ravellette) appeals a jury verdict which resulted in a judgment for the plaintiffs on an invasion of the right to privacy claim. Plaintiffs Lisa Kjerstad (Kjerstad), Deb Tireman (Tireman), and Taunia Hindman (Hindman) appeal by notice of review the granting of a directed verdict against their claim of intentional infliction of emotional distress.

## FACTS

Ravellette Publications, Inc., publishes the Pennington County Courant, a weekly newspaper, in Wall, South Dakota. At the commencement of this action, Ravellette owned 70% of Ravellette Publications, Inc. and managed the publication of the newspaper. Kjerstad, Tireman, and Hindman all worked for the paper in different capacities in 1989.

Adjacent to the only restroom at the employment location was a vacant room where Ravellette stored sheetrock and other construction materials that were being used for renovations to the building. In April of 1989, Tireman noticed light emanating from a small hole in the restroom wall which she described as a flickering light. At that same time, she also heard footsteps on the other side of the wall. In August 1989, Tireman again noticed the flickering light which was also accompanied by footsteps on the other side of the wall. At that time, Tireman questioned Kjerstad whether she had noticed the same flickering light, which she had not. As a result of their curiosity, the two of them then checked out a hole in the wall of the bathroom which was apparently made by a door handle, but saw no light coming through the hole.

On October 11, 1989, Tireman questioned both Kjerstad and Hindman about the light in the bathroom as she was now adamant that there was something suspicious. They investigated the area again and found a corresponding hole in the work area after removing pieces of rubbery caulk from the wall adjacent to the restroom. The hole in the wall was underneath a piece of pegboard which was leaning against the wall. When the three women inspected the hole, they found that a person could see directly to the

toilet. Tireman confirmed that the same flickering light that she had seen earlier was detected in the bathroom when the caulking was removed.

To verify their suspicions that their employer, Ravellette, was actually spying on them, they attempted to catch him in the act. On October 19, 1989, while Kjerstad was using the restroom, Hindman went outside the building to a small window that looked into the work area. Hindman observed Ravellette apparently looking into the restroom through the hole in the wall from the vacant work area. Kjerstad saw a flickering light and heard the footsteps on the other side of the wall while she used the restroom at this time.

Tireman, Kjerstad and Hindman stayed at Ravellette Publications for one week after this incident out of a sense of obligation to finish the current edition of the paper which they had started. They quit their jobs on October 25, 1989. The next day they filed sexual discrimination claims with the South Dakota Division of Human Rights. On January 7, 1991, the Commission of Human Rights accepted a Conciliation Agreement between the parties.[1] Ravellette was required to write a letter of apology to the plaintiffs as part of the agreement.

There was testimony demonstrating that all three women suffered physical symptoms as a result of their experiences with Ravellette. Each of the women saw a Dr. Hayes, who was deceased at the time of trial, after they had discovered that Ravellette had been watching them in the restroom. Tireman and Kjerstad also saw a social worker as a result of the incidents at the work place. Hindman testified that she vomited after she saw Ravellette observe Kjerstad in the rest-

room. She later had physical problems with diarrhea, headaches, and stomach sickness. Kjerstad testified that she had difficulty sleeping and had nightmares. Tireman testified that she had headaches and was physically nervous when she was alone with Ravellette.

The plaintiffs commenced the present action claiming an intentional infliction of emotional distress. They were allowed to amend their complaint one day before the trial was to begin to include the tort claim of invasion of privacy. At the close of all the evidence, the trial court granted Ravellette a directed verdict on the intentional infliction of emotional distress claim. Thereafter, the jury awarded $500.00 to Kjerstad and Tireman and $200.00 to Hindman in actual damages and all three plaintiffs were awarded $21,-000.00 in punitive damages.

## ISSUES

Ravellette appeals to this Court and raises six issues:

I. Did the trial court err when it determined this action was not barred through the Conciliation Agreement by the doctrine of res judicata?

II. Did the trial court abuse its discretion by granting plaintiffs' motion for leave to amend their complaint?

III. Did the trial court err when it allowed the invasion of the right of privacy claim to go to the jury?

IV. Did the trial court err when it failed to hold as a matter of law that the plaintiffs failed to mitigate damages?

V. Did the trial court err in allowing the issue of punitive damages to go to the

---

1. The Conciliation Agreement provided, in part:

    4. It is understood that this Agreement does not constitute an admission by the Respondent of any violation of the South Dakota Human Relations Act of 1972, SDCL 20–13 or Title VII of the Civil Rights Act of 1964. All parties agree to waive their rights to a formal determination, finding or decision by the Commission on any matters which were or might have been alleged as charges settled by this Agreement.

    \* \* \* \* \* \*

    7. Charging Party hereby waives, releases, and covenants not to sue the Respondent with

respect to any claim of discrimination as filed with the South Dakota Division of Human Rights or the Equal Employment Opportunity Commission, subject to the performance by the Respondents of the promises and representations contained herein. The Division shall determine whether the Respondents have complied with the terms of this Agreement.

    \* \* \* \* \* \*

    16. This Agreement will not be a bar to the prosecution of any other individual complaints or claims filed with the Division or with any other tribunal, federal, state, local or private.

jury and was there a sufficient level of evidence to sustain a jury award of punitive damages?

VI.   Was it reversible error for the trial court to deny defendant's motions for mistrial after plaintiffs' counsel had violated the motions in limine?

Tireman, Kjerstad and Hindman appeal and raise by notice of review one issue:

VII.   Did the trial court err when it granted defendant's motion for a directed verdict on plaintiff's intentional infliction of emotional distress claim?

We affirm on issues I through V and reverse and remand on issues VI and VII.

## I. RES JUDICATA

■ Ravellette alleges that the trial court erred when it determined that this action was not barred by the Conciliation Agreement filed with the Department of Human Rights. The doctrine of res judicata will apply to an action subsequent to a determination of an administrative body only when the claim was within the agency's jurisdiction and the claim was actually determined by the agency. *Johnson v. Kolman*, 412 N.W.2d 109, 113 (S.D.1987). Neither of these prongs is met in this case. The claims before the circuit court were not within the jurisdiction of the Department of Human Rights.

■ Administrative agencies have only such adjudicatory jurisdiction as is conferred upon them by statute. *Johnson* at 112. The South Dakota Human Relations Act confers jurisdiction on the Commission of Human Rights to hear charges of discrimination in the work place. SDCL 20–13. Nowhere in this Act is jurisdiction given to hear either the intentional infliction of emotional distress or the invasion of privacy claims. In fact, these claims were not even raised before the Human Rights Commission, and therefore res judicata has no effect here. *See Johnson* at 113.

■ Even if the Commission had jurisdiction, the claims of intentional infliction of emotional distress and invasion of privacy were not made and the agency actually made no determination of any issues. A prior determination of an action is accorded res judi-

cata effect only if a judgment on the merits was rendered. *Allan v. Sheesley*, 447 N.W.2d 361, 363 (S.D.1989). The Conciliation Agreement itself demonstrates that a decision on the merits was not reached. Paragraph 4 of the Agreement states:

> It is understood that this Agreement *does not constitute an admission by the Respondent* of any violation of the South Dakota Human Relations Act of 1972, SDCL 20–13 or Title VII of the Civil Rights Act of 1964. All parties agree to *waive their rights to a formal determination, finding or decision* by the Commission on any matters which were or might have been alleged as charges settled by this Agreement. (emphasis added).

Because the Conciliation Agreement does not amount to a formal determination of the charges, a decision on the merits was not reached. We hold that the claims raised in the circuit court action were not barred by the doctrine of res judicata.

## II. MOTION TO AMEND COMPLAINT

■ Ravellette contends that the trial court erred in allowing the plaintiffs to amend their complaint by adding a new cause of action one day before trial. A trial court may permit the amendment of pleadings before, during, and after trial without the adverse party's consent. *Tesch v. Tesch*, 399 N.W.2d 880, 882 (S.D.1987). SDCL 15–6–15(a) states that "[L]eave [to amend] shall be freely given when justice so requires." A motion to amend is addressed to the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion which results in prejudice to the non-moving party. *Id.* The record does not reflect that Ravellette has suffered any specific prejudice. Although a new cause of action was added, the two claims contained identical facts and issues. Ravellette has not demonstrated that he was unprepared to meet the contents of the amended complaint or that he has suffered any prejudice as a result thereof. Therefore, we find no clear abuse of discretion in allowing the complaint to be amended.

## III.  INVASION OF PRIVACY

Ravellette contends that the evidence was insufficient as a matter of law to submit the invasion of privacy claim to the jury.  Ravellette made a motion for a directed verdict against the invasion of privacy claim which the trial court denied.  Sufficiency of evidence questions are decided by the trial court and the appellate court under the same standard, regardless of whether they arose on a motion for directed verdict or a judgment n.o.v.  *Fajardo v. Cammack,* 322 N.W.2d 873, 875 (S.D.1982).  "In resolving sufficiency of evidence issues on appeal, this court should examine the record to determine only if there is competent and substantial evidence to support the verdict."  *Holmes v. Wegman Oil Co.,* 492 N.W.2d 107, 111 (S.D.1992).  All conflicts are resolved and all reasonable inferences are drawn in favor of the prevailing party.  *Id.*

Before claimants may recover on an invasion of the right to privacy claim, they must demonstrate an unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another.  *Baldwin v. First Nat. Bank of Black Hills,* 362 N.W.2d 85, 88 (S.D.1985).  There exists ample evidence in the record to submit the invasion of privacy claim to the jury.  There was testimony from the plaintiffs that Ravellette had observed Tireman as she was using the restroom.  There also existed circumstantial evidence that Ravellette had observed the other two plaintiffs in the privacy of the restroom.  Thus, there exists competent and substantial evidence to support the verdict.  The trial court did not err in submitting the invasion of privacy claim to the jury.

## IV.  MITIGATION OF DAMAGES

Ravellette also contends that as a matter of law the plaintiffs failed to mitigate damages.[2]  We hold that Ravellette has not preserved this matter on the record so as to enable this court to engage in proper appellate review.  SDCL 15–6–59(a) states in part:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against the law;

SDCL 15–26A–8 provides:

Such of the matters specified in subdivisions (6) and (7) of § 15–6–59(a) as may have been timely presented to the trial court by motion for directed verdict, request for findings, or other apt motion, offer, or objection may be reviewed on appeal from the judgment without necessity for an application for new trial.

It is well settled that, "[i]nsufficiency of the evidence may not be reviewed unless it has been timely presented to the trial court by a proper motion for a directed verdict, request for findings, or other apt motion, offer, objection, or exception."  *Strain v. Christians,* 483 N.W.2d 783, 791 (S.D.1992) (citing *City of Mitchell v. Beauregard,* 430 N.W.2d 704, 706–07 (S.D.1988)).  Nowhere in the record has Ravellette made any specific motion which would have allowed the trial court to determine whether or not the plaintiffs have failed their duty to mitigate damages as a matter of law.  We therefore hold that Ravellette has not preserved this issue on appeal.

## V.  PUNITIVE DAMAGES

Ravellette claims that the trial court erred in allowing the issue of punitive damages to go to the jury.  Ravellette first argues that plaintiffs have not proven compensatory damages as a matter of law and therefore are not entitled to punitive damages.  It is true that punitive damages may not be awarded absent an award of compensatory damages.  *Time Out Inc. v. Karras,* 469 N.W.2d 380, 386 (S.D.1991).  In this case, however, there exists competent evidence to support an award of compensatory damages.  All three plaintiffs testified that they had a physical and emotional reaction from this experience and had medical expenses associ-

---

**2.**  Because Ravellette's brief is not clear as to what is the exact basis of appeal on this issue, this Court is construing the issue as a sufficiency of evidence question.

ated with seeing a medical doctor. Further, two of the plaintiffs also had medical expenses after they saw a social worker. Therefore, compensatory damages were properly submitted to the jury.

■■■ Ravellette also argues that punitive damages should not be allowed as a matter of law because there was an insufficient level of evidence to prove malice, willful or wanton misconduct on the part of the defendant. Claims for punitive damages are prohibited in this state unless expressly authorized by statute. SDCL 21–1–4. Punitive damages are allowed in this action pursuant to SDCL 21–3–2 which states in part:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, ..., the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

Therefore, punitive damages are appropriate if there is evidence of oppression, fraud, or malice.

■■■ The trial court must find that the plaintiff has established that punitive damages are appropriate by a lower-order quantum of proof before the issue of punitive damages may go to the jury. SDCL 21–1–4.1 states:

> In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

SDCL 21–1–4.1 conditions the submission of punitive or exemplary damages to the jury on a showing by "clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct." The proponent bears a burden of demonstrating a "reasonable basis" to believe punitive damages are warranted. *Vreugdenhil v. First Bank of South Dakota, N.A.,* 467 N.W.2d 756, 760 (S.D.

1991). In other words, the proponent must prove a "prima facie case" for punitive damages. *Flockhart v. Wyant,* 467 N.W.2d 473, 475 (S.D.1991).

■■■ Malice is an essential element of a claim for punitive damages. *Dahl v. Sittner,* 474 N.W.2d 897, 900 (S.D.1991). Under SDCL 21–3–2, the jury may award punitive damages for either actual or presumed malice. *Holmes, supra* at 112. Presumed malice does not require hatred or ill will, "but is present when a person acts willfully or wantonly to the injury of others." *Case v. Murdock,* 488 N.W.2d 885, 891 (S.D.1992). Further, a claim for presumed malice can be sustained by demonstrating a disregard for the rights of others. *Flockhart, supra* at 478.

The determination by the trial court that there was a reasonable basis to submit the punitive damages issue to the jury will not be disturbed absent a clearly erroneous interpretation of the evidence. *Case, supra* at 891; *Vreugdenhil, supra* at 760. There exists substantial evidence in the record demonstrating that Ravellette acted with a disregard for the rights of others. Therefore, the trial court did not err in submitting the issue of punitive damages to the jury.

## VI. VIOLATIONS OF IN LIMINE MOTIONS

■■■ Prior to the commencement of trial Ravellette filed and was granted several motions in limine. Four of these motions were violated during the course of the trial. Specifically, in Motions in Limine 2–5, the trial court restricted the plaintiffs from offering any evidence or otherwise mentioning the following subject matters before the jury without further order of the court:

(2) Referring in any way to the proceedings before the State Division of Human Rights.

(3) Referring in any way to any settlement or compromise of any prior administrative proceedings.

(4) Referring in any way to Doctor Hayes or otherwise insinuating what Doctor Hayes may have testified to were he properly designated as an expert and

was present at trial, or introducing evidence of his office notes.

(5) Referring in any way to any suspicions by the plaintiffs that they were spied upon[.]

Despite the granting of these specific motions in limine, the counsel for the plaintiffs violated each one during the course of the trial.

In their opening statement, plaintiffs' counsel introduced material that violated the prohibitions of the fourth motion in limine regarding Dr. Hayes and the fifth motion in limine regarding the plaintiffs' suspicions that they were being spied upon. The trial court sternly admonished plaintiffs' counsel at that time but denied a motion for a mistrial. Plaintiffs' counsel later violated the prohibitions of the second and third motions in limine during questioning of Ravellette on rebuttal. They recalled Ravellette as a witness and asked him:

MR. DUFFY: Mr. Ravellette, it is true, is it not, that you issued a written apology for your actions—

MR. JOHNSON: Excuse me.

MR. DUFFY: To each of my clients—

THE COURT: Just a minute, approach, counsel.

Plaintiffs' counsel waived the letter of apology in his hand while he asked the above question. A motion for a mistrial was again denied by the trial court.

The decision to grant a new trial is left to the sound discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of an abuse of discretion. *Dartt v. Berghorst,* 484 N.W.2d 891, 894 (S.D.1992). The trial court, however, has the duty in jury cases to conduct proceedings, "to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." SDCL 19–9–5 (Rule 103(c)).

The granting of motions in limine to prevent the admission of prejudicial evidence is one method of achieving this duty. A motion in limine has been defined as:

[A] motion, heard in advance of jury selection, which asks the court to instruct the [party], its counsel and witnesses not to mention certain facts *unless and until permission of the court is first obtained outside the presence and hearing of the jury.*

*Lapasinskas v. Quick,* 17 Mich.App. 733, 170 N.W.2d 318, 319 (1969). The *Lapasinskas* court went on to state:

If prejudicial matters are brought before the jury, no amount of objection or instruction can remove the harmful effect, and the [party] is powerless unless he wants to forego his chance of a trial and ask for a mistrial. Once the question is asked, the harm is done.

*Lapasinskas,* 170 N.W.2d at 319. Thus, the purpose of the motion in limine is to prevent prejudicial evidence from reaching the ears of the jury.

In order for a violation of an in limine motion to serve as the basis for a new trial, the order must be specific in its prohibitions, and violations must be clear. *Northern Trust Bank v. Carl,* 200 Ill.App.3d 773, 146 Ill.Dec. 488, 493, 558 N.E.2d 451, 456 (1990). Further, a new trial may follow only where the violation has prejudiced the party or denied him a fair trial. *Id.* Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it. *State v. Michalek,* 407 N.W.2d 815, 818 (S.D.1987).

The motions in limine were specific in their prohibitions. Dr. Hayes was not to be referred to in *any* way. Further, the proceedings before the Division of Human Rights or the settlement provisions were not to be referred to in *any* way. This language is unequivocal and clear in its prohibitions. Plaintiffs' counsel violated the prohibitions by mentioning Dr. Hayes and by interjecting the apology in front of the jury.

The violations of the motions in limine have prejudiced Ravellette and denied him a fair trial. The rulings of the trial court were violated several times. Plaintiffs' counsel was sternly admonished after each violation. This was not a situation where the prejudice was created in the heat of the battle and was

beyond counsel's control. Rather, the attempt to introduce the evidence, especially the apology, appears to be an intentional attempt to bring to the jury evidence it was clearly not to hear.

If counsel wanted to renew the request for admission of any of the evidence excluded by the motions in limine, it was their duty to approach the bench outside of the jury's presence. *Scruggs v. State,* 782 S.W.2d 499, 502 (Tex.App.1989). As the Court stated in *Lapasinskas,* perhaps the greatest advantage to a motion in limine is not having to object in the jury's presence to evidence which may be logically relevant and which the jury may want to hear. *Lapasinskas,* 170 N.W.2d at 319. Plaintiffs' counsel made no attempt to raise the issue outside the hearing of the jury and instead inserted the improper evidence in their presence.

The prejudicial impact of the introduction of the evidence is amplified because the inadmissible evidence went to the vital issue in the case. The apology was written as a part of the settlement of the proceedings before the Division of Human Rights. SDCL 19–12–10 expressly precludes the admission of settlement negotiations to prove liability.[3] Further, whether or not Ravellette spied on these women was not actually determined by those proceedings.[4] Because settlement negotiations are inadmissible to prove liability and the issue of whether Ravellette spied on these women was never determined by the prior proceedings before the Division of Human Rights, the trial court properly determined that there would be no mention of those proceedings or the settlement thereof.

In *Cody v. Mustang Oil Tool Co., Inc.,* 595 S.W.2d 214, 216 (Tex.Civ.App.1980), the trial court held that it was reversible error to allow admission of police officer's testimony that he issued the defendant a traffic ticket after an automobile accident. In that case the question of which vehicle ran the red light was the vital factual issue and the trial court had previously granted a motion in limine restraining testimony concerning the ticket. The present case is analogous in that the trial court had granted a motion in limine that prevented evidence which effectively determined the vital factual issue in the case. Thereafter, the prejudicial evidence was introduced in violation of the motion in limine.

The factual issue that was to be determined in the present case was whether Ravellette intentionally observed the plaintiffs in the restroom. It was the jury's duty as the finders of fact to determine whether this actually occurred. When the jury heard the evidence that he had issued a written apology for his actions, the issue whether he had spied on the plaintiffs was essentially foreclosed in the minds of the jury. No conceivable testimony could have been more prejudicial and damaging to Ravellette than for the jury to hear that he had apologized to the plaintiffs. Further, as the Court in *Lapasinskas* stated, once the prejudicial matters are brought before the jury no amount of objection or instruction can remove the harmful effect. *Lapasinskas,* 170 N.W.2d at 319. Even if the trial court had instructed the jury to disregard the evidence, the knowledge of the apology would not have been erased in their minds. One can not unring a bell. Thus, Ravellette was clearly prejudiced by the introduction of the evidence which had been ruled inadmissible by a motion in limine.

The prejudicial effect of the evidence was further amplified because there was not overwhelming admissible evidence that Ravellette had spied on the plaintiffs. *See Cody* at 216. If there had been overwhelming evidence that Ravellette had spied on these women, the prejudicial effect of the evidence would have been slight and the error harmless. *See Michalek* at 818. In this case, however, the evidence that Ravellette had spied on

---

**3.** SDCL 19–12–10 reads in pertinent part:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

**4.** The analysis of whether a determination was made by the Division of Human Rights is discussed *supra* in issue I.

these women in the restroom is almost wholly based on circumstantial evidence. Only Tireman ever saw a flicker of light on more than one occurrence while she was using the restroom. Although the plaintiffs had heard footsteps on the other side of the wall, this could have been explained by the fact that Ravellette frequently worked in that area. The only direct evidence the plaintiffs presented was the incident where Hindman looked through a window for three seconds and observed Ravellette apparently looking through the hole while Kjerstad was using the restroom. Ravellette testified that he was working in the area at that time but denied that he was spying on Kjerstad. Without the apology, this Court is not prepared to conclude that the evidence weighed heavily in favor of the plaintiffs' version of the events in question and that the apology had no effect on the jury's decision.

The introduction of the written apology was in clear violation of the motions in limine granted by the trial court. The inadmissible evidence essentially decided the vital issue in a case where the evidence was not overwhelmingly balanced either way. Consequently, this error in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of Ravellette in that he was denied a fair trial. Therefore, it is the holding of this Court that Ravellette was denied a fair trial and that a mistrial should have been granted.

## VII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The final issue is whether the intentional infliction of emotional distress claim, upon which the trial court gave a directed verdict, should have been presented to the jury. On a motion for a directed verdict, the trial court must accept the evidence which is most favorable to the party against whom the motion is sought. *Baldwin v. First Nat. Bank of Black Hills*, 362 N.W.2d 85, 88 (S.D.1985). The trial court must also indulge all legitimate inferences that can fairly be drawn from the evidence in favor of the nonmoving party. *Id.* If there is any substantial evidence to sustain the cause of action, it must be submitted to the jury. *Id.*

In *First Nat. Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 167 N.W.2d 381 (1969) this court recognized the tort of intentional infliction of emotional distress. The *Bragdon* court held the important elements of that tort to be, "that the act is intentional, that it is unreasonable, and that the actor should recognize it as likely to result in illness (emotional distress)." *Chisum v. Behrens*, 283 N.W.2d 235 (S.D.1979); *Ruple v. Brooks*, 352 N.W.2d 652 (S.D.1984); *Ruane v. Murray*, 380 N.W.2d 362 (S.D.1986); *Groseth Intern., Inc. v. Tenneco, Inc.*, 440 N.W.2d 276 (S.D.1989) (*Groseth II*), and *Tibke v. McDougall*, 479 N.W.2d 898 (S.D. 1992).

Since then there has been a series of cases attempting to define this tort and its essential elements. The court in *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 169 (S.D.1987) (*Groseth I*), *Mackintosh v. Carter*, 451 N.W.2d 285 (S.D.1990) and *Tibke v. McDougall, supra*, determined the criteria for establishing a prima facie case for intentional infliction of emotional distress to be: (1) an act by defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause plaintiff severe emotional distress; (3) the defendant's conduct was the cause in fact of plaintiff's injuries; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct. However in *Groseth II, supra*, we said, without any further explanation, that the elements of intentional infliction of emotional distress were more restrictive than *Groseth I*, which cited *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312 (1963).

Between the time *Groseth I* was decided in 1987 and *Groseth II* was decided in 1989, our court again considered the elements of this tort in *Wangen v. Knudson*, 428 N.W.2d 242 (S.D.1988). We reiterated the same basic elements for intentional infliction of emotional distress, but added, "[T]here is liability for conduct exceeding all bounds usually tolerated by decent society, which is of a nature especially calculated to cause, and does cause, mental distress of a very serious

kind." *Mackintosh, supra; Ruple, supra.* *Wangen* went on to say that:

> [O]ne who by extreme and outrageous conduct intentionally or *recklessly* causes severe emotional distress is subject to liability for such emotional distress.... Liability may attach where a defendant engages in "reckless" conduct, conduct which constitutes a deliberate disregard of a high degree of probability that emotional distress will follow. Restatement (Second) of Torts § 46, Comment (i) ... Wangen was only required to show that defendants intentionally or recklessly acted in a manner which would create an unreasonable risk of harm to him, and that they knew or had reason to know of facts which would lead a reasonable man to realize that such actions would create the harm that occurred.

*Wangen,* 428 N.W.2d at 248.

Subsequently, in *Petersen v. Sioux Valley Hospital,* 486 N.W.2d 516 (S.D.1992) (*Petersen I*) our court set forth the same well-established elements, but cited *Wangen, supra,* as modifying the test. Upon rehearing *Petersen v. Sioux Valley Hospital,* 491 N.W.2d 467 (S.D.1992) (*Petersen II*) the court directly addressed the issue of whether intentional infliction of emotional distress includes reckless conduct resulting in emotional distress. In citing *Wangen, supra,* we said:

> [T]his court cited with approval the Restatement (Second) of Torts and specifically found that the tort of intentional infliction of emotional distress imposes liability on the defendant for intentional and reckless conduct resulting in emotional distress.

Thus, the court embraced the rule set forth in the Restatement (Second) of Torts. This decision was reaffirmed in *Speck v. Federal Land Bank of Omaha,* 494 N.W.2d 628 (S.D. 1993), and *Bass v. Happy Rest, Inc.,* 507 N.W.2d 317 (S.D.1993).

█ It is for the trial court to determine, in the first instance, whether a defendant's conduct may be reasonably regarded as so extreme and outrageous so as to permit recovery, or whether it is necessarily so. When reasonable minds may differ, it is for the jury to determine whether the conduct

has been sufficiently extreme and outrageous to result in liability. *Tibke,* (citing Comment (h) to Restatement (Second) of Torts § 46).

There was testimony that the plaintiffs caught Ravellette spying on them in the restroom through a hole in the wall. This behavior presents a jury issue as to whether it was extreme and outrageous conduct. Although the trial court decided that there was no intent on the part of Ravellette to cause plaintiffs severe emotional distress, we are of the opinion that there was sufficient evidence to create a jury question as to whether or not Ravellette's conduct intentionally or recklessly caused the plaintiffs an extreme disabling emotional response.

█ Intent in the law of torts means that the actor acts for the purpose of causing an invasion of another's interest (invasion of privacy, for example) or knows that such an invasion is resulting, or is substantially certain to result from his conduct. 74 Am.Jur. 2nd Torts § 6. Intentional tortious conduct occurs when a person acts either for the purpose of causing or with knowledge to a substantial certainty that their act will cause an invasion of the interest of another in a way that the law forbids. Intent requires more than the existence and appreciation of risk. It requires an act done either for the purpose of invading the legally protected interest of another or knowledge to a substantial certainty that such an invasion will occur. Pattern Civil Instructions 14–01 (citing *Frey v. Kouf,* 484 N.W.2d 864 (S.D.1992)), *VerBouwens v. Hamm Wood Products,* 334 N.W.2d 874 (S.D.1983) and Restatement (Second) of Torts § 8A.

There was testimony that all three plaintiffs saw Dr. Hayes after this incident. Kjerstad and Tireman also went to counseling for a period of time. Hindman testified that she vomited when she saw Ravellette observe Kjerstad. She later had physical problems with diarrhea, headaches and stomach sickness. Kjerstad testified that she had difficulty sleeping and had nightmares as a result of this incident. It is for the jury to determine if Ravellette knew to a substantial certainty that his act would cause an invasion of the interest of his female employees, or that the

act was done with knowledge to a substantial certainty that an invasion of his employees' interests would occur. It is a jury question whether Ravellette knew or had reason to know that his acts would lead a reasonable person to realize that his actions would create the harm that occurred.

These facts clearly establish sufficient evidence so that reasonable minds could differ on whether Ravellette's actions amounted to extreme and outrageous conduct which intentionally or recklessly caused plaintiffs severe emotional distress. Therefore, this Court holds that there exists substantial evidence to sustain a cause of action for the intentional infliction of emotional distress and that it should have been submitted to the jury.

We affirm on issues I through V and reverse and remand on issues VI and VII.

WUEST, Acting C.J., and AMUNDSON, J., concur.

HENDERSON and SABERS, JJ., concur specially.

BRADSHAW, Circuit Judge, for MILLER, C.J., disqualified.

HENDERSON, Justice (specially concurring).

A jury trial must be fair for it is a determination of the basic rights afforded under our State and Federal Constitutions.

Was the conduct before us so clearly prejudicial that it constituted prejudicial error depriving Ravellette of a *fair* trial?

There were repeated warnings by the trial judge to trial counsel concerning violations of the order in limine. As a result of questions propounded by counsel, the jury heard evidence which the trial court had forbidden to be heard. This Court should not condone repeated transgressions.

*Lapasinskas v. Quick,* 17 Mich.App. 733, 170 N.W.2d 318 (1969), is heavily relied upon by this Court, as an authority, in reviewing the propriety of the trial court's decision to not grant a mistrial. This case is 25 years old and is in the Michigan Court of Appeals. The Supreme Court of Michigan is the highest court in that state. In reading that case,

it appears that the *Lapasinskas* Court has a different scope of review than the highest court of this state has previously adopted. It has adopted: "Once the question is asked, the harm is done." *Lapasinskas,* 170 N.W.2d at 319. South Dakota has no such rule. *Lapasinskas,* at 320–321, elaborates more fully on the "once the question is asked, the harm is done" rule by expressing further:

> We have no way of knowing whether the defendants' injection of this issue influenced the jury or whether the trial judge's cautionary instruction in fact removed any effect adverse to plaintiff's claim. [Citations omitted.] We cannot say that the verdict in this case might not have been different had this prejudicial issue not been adverted to by the defendants. (Emphasis supplied mine.)

Regarding the scope of review on motions for mistrial, the law is well settled in South Dakota; such a motion is committed to the discretion of the trial court. This Court will reverse a trial court's ruling only where that discretion is "clearly abused." *State v. Farley,* 290 N.W.2d 491, 494 (S.D.1980). *Accord State v. Michalek,* 407 N.W.2d 815, 818 (S.D. 1987). Thus, on the scope of review in regard to motions for mistrial, there exists precedent in this Court. It is the duty of a court of last resort to abide by its former decisions and not to vary, change, or depart from them unless it is convinced former decisions were wrongly decided. I would abide in our own decisions which are governing precedent.

Applying precedent, it appears this case should be reversed.

> "Prejudicial error" is error which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.

*Michalek,* 407 N.W.2d at 818. *Michalek* draws on precedent of 30 years ago: *State v. Reddington,* 80 S.D. 390, 125 N.W.2d 58 (1963).

As factually detailed by Circuit Judge Bradshaw, the forbidden evidence, heard by the jury, produced *some* effect upon the jury's verdict.

In all other matters, I outright concur in the majority opinion.

SABERS, Justice (concurring specially).

I write specially to emphasize that "the tort of intentional infliction of emotional distress encompasses liability for *reckless* infliction of emotional distress[.]" *Petersen,* 491 N.W.2d at 469 (emphasis added). Therefore, it is *also* for the jury to determine whether Ravellette engaged in *reckless* conduct, defined in Restatement (Second) of Torts § 46 cmt. i (1965) as " 'conduct which constitutes a deliberate disregard of a high degree of probability that the emotional distress will follow.' " *Id.* at 468 (quoting *Wangen,* 428 N.W.2d at 248).