CHRIS DODDS, Plaintiff-Appellant, v. WESTERN KENTUCKY NAVIGATION, Defendant and Third-Party Plaintiff-Appellee and Cross-Appellant (Occidental Chemical Corporation, Inc., Third-Party Defendant-Cross-Appellee).

Fifth District   No. 5—96—0836

Opinion filed July 6, 1998.

Morris B. Chapman and Clarence W. Harrison II, both of Morris B. Chapman & Associates, Ltd., of Granite City, for appellant.

Ronald E. Fox and Nancy J. Rosenstengel, both of St. Louis, Missouri, for appellee Western Kentucky Navigation.

R.W. Wilson and William B. Starnes II, of Edwardsville, for appellee Occidental Chemical Corporation, Inc.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Chris Dodds, appeals from the trial court's denial of his motion for directed verdict and his posttrial motion for a new trial. Plaintiff, an employee of defendant, Western Kentucky Navigation, filed a complaint under the Jones Act (46 U.S.C. § 688 *et seq.* (1976)), alleging that defendant negligently caused injuries to his back and arm. The jury returned a verdict for plaintiff in the amount of $200,000, which was reduced by 50% to $100,000 based upon plaintiff's contributory negligence. Defendant moved for a setoff of $190,000 as a result of an earlier settlement between plaintiff and third-party defendant Occidental Chemical Corporation, Inc. (Occidental). The circuit court granted the setoff and entered a net judgment of zero dollars.

On appeal, plaintiff presents the following issues: (1) whether the trial court erred in failing to grant plaintiff a directed verdict and (2) whether the trial court improperly admitted into evidence collateral matters such as collateral source payments, surrebuttal as to a nurse's gender, and the disciplinary consequences of professional conduct. We reverse and remand for a new trial on the issue of damages.

I

On April 26, 1993, plaintiff was engaged as a first mate aboard the motor vessel Bill McCormick, operated by defendant. On the day of the incident, plaintiff was working with three other crew members, pilot Tom Flowers and deckhands Steve "Ninja" Martin and Kevin Edwards. The McCormick was headed southbound on the Illinois River towing barges, three barges wide and four barges deep in the front, and three barges, four deep across the back. When the McCormick arrived at the Marseilles Lock in Ottawa, the tow prepared to enter the

lock, which is 110 feet wide. The tow was 105 feet wide, leaving only a five-foot clearance. Plaintiff, Martin, and Edwards were on the front barge, OCC 119, owned by Occidental. OCC 119 is a covered barge with a steel deck and had been freshly painted, including its timberheads. As the McCormick approached the long wall of the lock, plaintiff and Martin were on the starboard bow corner and Edwards was on the port bow corner. Plaintiff and Edwards had radios so the crew could communicate with Flowers in the pilothouse. Due to the pilot's limited visibility, plaintiff and the other deckhands informed Flowers of the distance of the tow relative to the long wall.

As the barges entered into the lock area, the crew had to get the tow lined up square along the long wall of the lock. A line was taken off the head of the tow and thrown to the lockman on the long wall. The lockman secured the line. Martin caught the line and wrapped the timberheads on OCC 119. This line is not tied off because it feeds through as the tow flattens along the long wall. A deckhand's job is to hold the unsecured end of the line as it feeds through the timberheads.

The mishap at issue here occurred as the tow began moving along the long wall. Plaintiff was watching the stern when Flowers radioed him to let the line loose. Plaintiff told Martin to take the line off. Martin took the line off the front timberhead and began to throw the wraps off the second timberhead when the line jerked out of Martin's hand. Martin was having difficulty releasing the line because the line was seizing or sticking to the paint on the timberhead. Plaintiff came over to Martin. There is a dispute regarding whether Martin told plaintiff the line was "fixing to shoot," meaning the line would release suddenly and with tremendous force. Plaintiff attempted to free the seized line by throwing off wraps from the timberhead. The first wrap came off, but the second only went halfway around the timberhead, sending a cloud of white paint into plaintiff's face. The line "shot," throwing plaintiff into the steel deck of the barge. Plaintiff sustained serious injuries to his left arm and was removed by emergency personnel and taken to a nearby hospital for medical treatment.

At Ottawa Community Hospital, plaintiff was treated by Dr. Bok Choi, an orthopedic surgeon, for a fractured left forearm. Treatment included the insertion of a metal rod. Plaintiff also received treatment for injuries to his left knee. On May 10, 1993, plaintiff was seen by Dr. Mark Greatting, an orthopedic surgeon in Springfield, for postsurgery follow-up care. Dr. Greatting performed additional surgery on plaintiff's left forearm on August 27, 1993.

Plaintiff first complained of pain associated with his back on his December 14, 1993, office visit with Dr. Greatting. On this visit,

plaintiff stated that the neck pain began about one month after the accident. Dr. Greatting examined plaintiff's neck and found no abnormalities. Plaintiff did not specifically complain of lower back pain to Dr. Greatting. Prior to this office visit, there are no medical reports indicating that plaintiff complained of back or neck pain to either Dr. Greatting or the nurses from Comprehensive Rehabilitation Associates, who were assigned to accompany plaintiff on checkups for his arm injury.

Subsequently, plaintiff was examined by Dr. George Schoedinger, an orthopedic surgeon, for back pain. Plaintiff was diagnosed as having herniated disks in his lumbar spine at the L4-L5 and L5-S1 levels. Plaintiff underwent back surgery on January 24, 1995. Plaintiff was unable to return to his job as first mate, which involves heavy labor. At the time of the trial plaintiff was engaged in light duty at a lumberyard.

On March 13, 1996, the jury returned a verdict in favor of plaintiff in the total amount of $200,000, which was reduced by 50% based upon plaintiff's contributory negligence. The net amount of the verdict was $100,000. Defendant moved for a setoff of $190,000 based upon plaintiff's earlier settlement with Occidental at the outset of the trial. The trial court granted the setoff and entered a net judgment of zero dollars. Plaintiff filed his posttrial motion, which was denied. Plaintiff appeals.

The following facts are pertinent to defendant's cross-appeal. Defendant filed contribution and indemnity claims against third-party defendant Occidental, which owned the barge plaintiff was on at the time of his injury. Defendant also filed a maintenance-and-cure claim against Occidental for payments made to plaintiff as a result of Occidental's negligence in providing a tow with a painted timberhead. On March 4, 1997, plaintiff settled with Occidental. Plaintiff moved to dismiss his unseaworthiness claims against defendant and proceeded on a negligence theory under the Jones Act. Defendant filed an amended answer in which defendant admitted that "a barge with a painted timberhead was in its tow and that said timberhead created an unsafe condition by causing the line to .seize." The trial court dismissed defendant's maintenance-and-cure action against Occidental and barred defendant from discussing Occidental during the trial and from having the jury assign a portion of fault to Occidental. The trial court further determined that the Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1992)) applied to the settlement between plaintiff and Occidental, and the court dismissed Occidental from the action. Defendant filed its posttrial motion, which the trial court denied. Defendant appeals.

## II

Plaintiff maintains that the trial court erred in denying his motion for directed verdict on the issue of defendant's liability because plaintiff has met his burden of proof by establishing the following: that defendant had a nondelegable duty to provide plaintiff with a reasonably safe place to work; that defendant, by its own admission, breached that duty by providing a tow containing a barge with a painted timberhead, which created an unsafe condition by causing the line to seize; and that plaintiff was injured attempting to rectify the unsafe condition of the seized line. Thus, according to plaintiff, the trial court should have granted a directed verdict in plaintiff's favor as to liability and proceeded on the issue of plaintiff's comparative negligence.

Defendant maintains that its amended answer admitted fault only to the extent that a barge with a painted timberhead was in its tow and that the timberhead created an unsafe condition by causing the line to seize. Defendant further insists that it denied all allegations that the painted timberhead caused plaintiff's injuries. Instead, defendant asserts that plaintiff's injuries could have been avoided had he followed proper safety procedures and not placed himself in harm's way. We reject this argument.

•■ ■ Under the Jones Act, "[a]ny seaman who shall suffer personal injury in the course of his employment" has rights parallel to those of railway employees under the Federal Employers' Liability Act (FELA) (46 U.S.C. § 688 (Supp. 1986)). *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 681 (10th Cir. 1981). Section 51 of the FELA provides, in relevant part, that "[e]very common carrier by railroad *** shall be liable in damages *** for such injury or death resulting in whole or in part from the negligence of any officers, agents, or employees of such carrier." 45 U.S.C. § 51 (1988). In *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506, 1 L. Ed. 2d 493, 499, 77 S. Ct. 443, 448 (1957), the Supreme Court stated:

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

Thus, in a Jones Act case, the plaintiff's burden to prove causation is "very light." *Cella v. United States*, 998 F.2d 418, 427 (7th Cir. 1993). "The plaintiff must merely establish that the employer's acts or omissions played some part, no matter how small, in producing the employee's injury." 998 F.2d at 428. An employer may raise a sole-proximate-cause defense if the employer can show that an intervening and independent cause was the causative factor in the plaintiff's

injuries. *Baker v. CSX Transportation, Inc.*, 221 Ill. App. 3d 121, 130, 581 N.E.2d 770, 777 (1991).

> "For an intervening act, omission, or event to be the sole proximate cause, it must be, by itself, the direct and immediate cause of the injury, or must be a cause which so entirely supersedes the operation of the defendant's negligence that it alone, without the defendant's negligence contributing thereto in the slightest degree, produces the injury." *Baker*, 221 Ill. App. 3d at 130, 581 N.E.2d at 777.

A directed verdict is proper where "all of the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).

■ Upon a review of the record, we find that plaintiff clearly established his burden of proof with respect to defendant's duty to plaintiff, its breach of that duty, and the resulting injury to plaintiff. Pursuant to the Jones Act, defendant has a nondelegable duty to provide plaintiff with a safe place to work and "equipment that is reasonably fit for the safe performance of the task at hand." *Saleh v. United States*, 849 F. Supp. 886, 892 (S.D.N.Y. 1994). Defendant, in its amended answer, stated that it "admits fault to the extent that a barge with a painted timberhead was in its tow and that said timberhead created an unsafe condition by causing the line to seize." Further, at trial, defendant's experts testified that a painted timberhead was hazardous and presented a danger because a line would stick to the painted surface, causing the line to seize. A seized line would "shoot," potentially causing injury to the seaman working the line. The evidence sufficiently established defendant's duty and its breach of that duty.

■ Turning to the issue of causation, defendant maintains that the line seizing on the painted timberhead was not the proximate cause of plaintiff's injury. Rather, defendant claims that the cause of plaintiff's injury was his failure to follow certain safety rules in throwing the line off. Defendant contends that plaintiff placed himself in harm's way when he ignored Martin's warning that the line was "fixing to shoot" and began throwing off wraps with the line behind him. Defendant insists that plaintiff's violation of its safety rules is the sole proximate cause of plaintiff's injury. Defendant's argument fails as there is nothing in the record to support the conclusion that the painted timberhead in no way caused plaintiff's injuries. The evidence reveals that the painted timberhead created the unsafe condition plaintiff was attempting to rectify at the time of his injury. Without

the paint, the timberhead would not have presented the hazardous condition. Nothing in the record indicates that the injuries plaintiff sustained were the result of anything other than the hazardous situation brought about by the painted timberhead. Further, defendant's attempt to attribute plaintiff's injuries to plaintiff's violation of safety rules is contrary to defendant's expert's testimony that plaintiff was a safe worker. Even if plaintiff failed to observe defendant's safety rules, plaintiff's conduct would, at most, constitute a concurring proximate cause of the incident, not the sole proximate cause. *Baker*, 221 Ill. App. 3d at 131, 581 N.E.2d at 778. We find that the evidence establishes that the painted timberhead was the proximate cause of plaintiff's injury. Consequently, we find that the trial court erred in denying plaintiff's motion for directed verdict as to liability.

## III

■ Since we are reversing and remanding for new trial based on the directed verdict issue, we will address only those further contentions of plaintiff that may recur in the retrial of this cause. Plaintiff next contends that defense counsel, during his redirect examination of David Dewey, president of Western Kentucky, violated the order *in limine* prohibiting the introduction of evidence regarding the maintenance-and-cure payments to plaintiff, by questioning Dewey about these payments, thereby causing prejudice to plaintiff.

> "A 'motion in limine' allows a party to obtain an order excluding inadmissible evidence without having to object to, and thereby to emphasize, the evidence before the jury and thus enables a party to prevent his opponent from attempting to prejudice the jury." *Baker v. CSX Transportation, Inc.*, 221 Ill. App. 3d 121, 132, 581 N.E.2d 770, 778-79 (1991).

■ Plaintiff's counsel, during his examination of Dewey as an adverse witness, inquired into payments made to plaintiff after his injury when he served as a steersman in the wheelhouse. Dewey indicated that plaintiff had not received wages. On redirect, defense counsel sought to clarify the kind of compensation plaintiff received during the time plaintiff worked as a steersman. In so doing, defense counsel inquired about the total amount of compensation plaintiff received, including the maintenance payments. At this point plaintiff's counsel made a timely objection, which was sustained by the trial court. No further violations of the *in limine* order occurred. Plaintiff argues that this violation was prejudicial in that it created a perception that plaintiff's counsel was preventing the jury from hearing evidence. While the court's order *in limine* was violated, plaintiff did not show prejudice of such a character or magnitude as to deprive plaintiff of a fair trial. See *Northern Trust Bank v. Carl*, 200 Ill. App. 3d 773,

778, 558 N.E.2d 451, 455 (1990). Since this was, however, a violation of the *in limine* order, we do not expect that it will be repeated upon the retrial.

■ Lastly, plaintiff claims that, over plaintiff's objections, the trial court allowed defense counsel to make improper comments during closing arguments referring to professional disciplinary actions against defendant's witnesses for failing to note plaintiff's complaints of neck and back pain in their medical reports and making suggestions that an adverse verdict against defendant would impugn the professional reputations of these witnesses. We agree.

Attorneys are allowed broad latitude in closing argument. *Lewis v. Cotton Belt Route-St. Louis Southwestern Ry. Co.*, 217 Ill. App. 3d 94, 119, 576 N.E.2d 918, 932 (1991). The scope of a closing argument is within the sound discretion of the trial court. *Decker v. St. Mary's Hospital*, 249 Ill. App. 3d 802, 821, 619 N.E.2d 537 (1993). In closing arguments, commentary should be limited to the facts in evidence. *Rush v. Hamdy*, 255 Ill. App. 3d 352, 359, 627 N.E.2d 1119, 1123 (1993).

During closing arguments, defense counsel stated:

"And ladies and gentlemen, it is clear that if this nurse, any of these nurses, had falsified records, they would be facing ethical violations.

* * *

And there was none.

* * *

These nurses would essentially be losing their license. And if Dr. Greatting had ignored him, he would be subject to the same problems and so would Dr. Choi."

Defense counsel's inappropriate references to ethical violations and professional disciplinary actions were made solely to introduce evidence of good reputation for the truth and veracity of the professionals who testified. "Evidence of good reputation for truth and veracity is not admissible merely because one testified in a trial." *People v. Doll*, 126 Ill. App. 3d 495, 501, 467 N.E.2d 335, 340 (1984). The suggestion that these professionals are truthful in their statements because they could otherwise impugn their reputations and risk disciplinary action interjects an improper element into the case and appeals to the passions and prejudices of the jury. Such comments are immaterial to the question of defendant's negligence. Accordingly, we find that, under the circumstances here, defense counsel's inappropriate remarks, during closing, interjected irrelevant issues into the case that should not have been considered by the jury.

Because of our disposition of this matter, we need not address those issues raised by defendant in its cross-appeal against Occidental.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and the cause is remanded for a new trial on the issue of damages.

Reversed and remanded.

MAAG and KUEHN, JJ., concur.