1996 SD 5

**Bart UHLIR, as Administrator of the
Estate of Stanton Uhlir, Deceased,
Plaintiff and Appellee,**

v.

**David R. WEBB, Defendant
and Appellant.**

**Nos. 19146, 19159.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1995.

Decided Jan. 10, 1996.

Michael "Mick" Strain, White River, Michael W. Strain of Morman, Smit, Hughes, Strain, Molstad & Haivala, Sturgis, for plaintiff and appellee.

Thomas E. Simmons and Daniel F. Duffy of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] This appeal arises from a medical malpractice case in which the estate of Stanton Uhlir sued physician's assistant, David Webb. A jury returned a verdict for Webb. Subsequently, Uhlir filed a motion for a new trial which the trial court granted. Webb appeals, claiming the order granting the new trial was signed after the statutory deadline, and therefore, the motion is necessarily denied by operation of law. We find the trial court's ruling on the motion for a new trial timely but reverse the trial court's decision.

## FACTS AND PROCEDURE

[¶ 2] Stanton Uhlir entered the Philip Health Services clinic September 27, 1990 complaining of chest and arm pain. David Webb, physician's assistant, performed a physical examination of Uhlir which consisted of taking his history, completing a blood count, EKG, and chest x-rays. The results of these tests were negative for heart disease, as was confirmed by a Rapid City cardiologist who reviewed the EKG. The chest x-rays, reviewed by a radiologist at the clinic, indicated possible pneumonia. Webb prescribed medication appropriate for the treatment of pneumonia and requested Uhlir stay overnight at the local hospital for observation and more tests. Uhlir refused and did not return to the clinic. Two days later, Uhlir died of a heart attack. Bart Uhlir, Stanton's son and administrator of his estate,

brought a medical malpractice action against Webb.

[¶ 3] Following a four-day trial, a jury returned a 10–2 verdict for Webb. Jurors were polled individually and each of the ten confirmed the verdict was his or her own. Judgment was entered for Webb January 17, 1995. Notice of Entry of Judgment was served and filed January 23, 1995.

[¶ 4] On January 30, 1995, Uhlir filed a motion for a new trial alleging juror misconduct. Attached to and in support of Uhlir's motion was an affidavit from one of the two dissenting jurors which stated "a member of the jury advised the rest of us jurors that she knew the hospital already settled out of this lawsuit." The trial court held a telephonic hearing on Uhlir's motion February 13, 1995. At the conclusion of the hearing, the trial court orally granted the motion and ordered both parties to submit findings of fact and conclusions of law and proposed orders.

[¶ 5] On March 8, 1995, Webb submitted a motion for reconsideration. In the alternative, Webb requested an order denying the motion for a new trial because the trial court had failed to file an order extending the statutory time period for deciding Uhlir's motion as required by SDCL 15–6–59(b). The trial court signed the order granting the motion for a new trial on March 9, 1995. Notice of Entry of the Order was served and filed March 21, 1995. Webb filed his Notice of Appeal April 6, 1995.

[¶ 6] Webb appeals raising four issues:

   I.  Whether the motion for a new trial was denied by operation of law because the trial court failed to grant or deny the motion within the statutory time period or file an order extending the time for entering such order.

  II.  Whether the trial court erred in granting the motion for a new trial based on allegations of juror misconduct.

 III.  Whether the trial court erred in failing to consider four jurors' affidavits refuting any claim of juror misconduct.

 IV.  Whether the trial court erred in failing to conduct a full evidentiary hearing on the motion for a new trial.

[¶ 7] Uhlir filed a Notice of Review requesting our review of the denial of the motion for a new trial in the event we find the motion denied by operation of law.

## ANALYSIS AND DECISION

### [¶ 8] I.  Timeliness of Motion for New Trial

[¶ 9] SDCL 15–6–59(b) provides:

The motion for a new trial stating the grounds thereof shall be served and filed not later than ten days after the notice of entry of the judgment.

The court shall make and file the order granting or denying such new trial within twenty days after the service and filing of such motion, unless for good cause shown, the court files an order within said twenty days extending the time for entering such order. If a motion for new trial has not been determined by the court and no order has been entered by the court extending the time for such ruling within twenty days from the date of service and filing of such motion, it shall be deemed denied.

This statute was amended effective January 15, 1983 by Supreme Court Rule 82–32 to replace its previously imprecise language with a more definite standard. We find the language of this statute to be clear, certain, and unambiguous. Therefore, our only function is to declare its meaning as clearly expressed. *In re Estate of Chilton*, 520 N.W.2d 910, 912 (S.D.1994).

[¶ 10] We recently examined the trial court's statutory obligation in *Schneider v. Yellow Wolf*, 480 N.W.2d 767 (S.D.1992). In that case, motions for a new trial were served and filed on July 19, 1991 and July 22, 1991. The trial court did not enter an order extending the time to decide the motions. A hearing on the motions was held August 12, 1991 and an order denying the motions for new trial filed August 28, 1991. Both parties argued to this Court that the August 12 hearing (held more than twenty days after

the motions requesting a new trial were filed) tolled the statutory period within which the trial court must resolve motions for a new trial. We held in *Schneider* that a hearing does not toll this statutory deadline.

> SDCL 15–6–59(b) clearly requires that within the twenty-day period the trial court must either 'make and file the order granting or denying' the motion for new trial or 'file' an order extending the twenty-day period. In this case, the trial judge did not enter an order denying the motion for new trial until August 28, 1991, well beyond the twenty-day period. The trial judge did not enter any order extending the time to consider the motion for new trial. Thus, pursuant to SDCL 15–6–59(b), each motion for new trial was deemed denied twenty days after they were served and filed.

*Schneider*, 480 N.W.2d at 769.

[¶ 11] Noting the plain language of the statute, we stated, "[t]he trial judge must decide the motion or extend the time period *within* the twenty-day period. At the expiration of the twenty days, the motion is deemed denied if the trial court has neither decided the motion nor extended the time period." *Id.* at 769–70 (emphasis original).

■ [¶ 12] The situation herein differs from *Schneider*, where no ruling, oral or written, was made until after the twenty-day period had expired. Thus, *Schneider* is controlled by the final sentence of SDCL 15–6–59(b) which resulted in an automatic denial of the motion upon the expiration of the twenty days. In the case before us, however, the trial court decided the motion orally at the conclusion of a hearing held fourteen days after the filing of Uhlir's motion, thereby ruling within the twenty-day statutory period. The portion of SDCL 15–6–59(b) which prompts the automatic denial of a motion, that is, the court's failure to either determine the motion or enter an order extending the time period, never became operative here. This rule is sound, because a clerical error beyond the control of the party and his or her attorney should not result in a denial of a motion that has already been orally granted by the trial court. This oral ruling resolved the motion for a new trial in a timely manner

and satisfied the requirements of SDCL 15–6–59(b).

[¶ 13] **II. Allegation of Juror Misconduct**

[¶ 14] Uhlir's motion for a new trial which the trial court granted claimed juror misconduct. The claimed misconduct involved an allegation that one of the jurors told other members of the jury the hospital had settled out of the lawsuit underlying this appeal. Uhlir attached an affidavit from one of the jurors in support of his motion. Following a hearing on this motion and the trial court's oral decision granting a new trial, Webb submitted a motion for reconsideration and attached affidavits from four jurors who disavowed the first juror's claim and supported the jury's verdict.

[¶ 15] SDCL 19–14–7 prohibits the trial court from accepting any evidence regarding the mental processes of the jury or the effect on any juror of information received during jury deliberations. The statute provides:

> Except as otherwise provided by statute, upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The statute does permit, however, evidence, including juror's affidavits, on the "question whether extraneous prejudicial information was improperly brought to the jury's attention." SDCL 19–14–7; *State v. Wilkins*, 536 N.W.2d 97, 99 (S.D.1995); *Shamburger v. Behrens*, 418 N.W.2d 299, 303 (S.D.1988);

*Buchholz v. State*, 366 N.W.2d 834, 838 (S.D. 1985); *State v. Finney*, 337 N.W.2d 167 (S.D. 1983).

[¶ 16] We recently discussed the difference between intrinsic and extraneous information in the jury room in *Wilkins*, 536 N.W.2d at 99. In that case, we noted the statute prohibits juror testimony on intrinsic information such as "(1) the effect such extraneous information had upon their minds; (2) statements or discussions which took place during deliberations; or (3) evidence of 'intimidation or harassment of one juror by another, or other intra-jury influences.'" *Id.* We listed examples of extrinsic information as including "media publicity, conversations between juror and non-jurors, and evidence not admitted by the court." *Id.*

[¶ 17] Our review of the affidavit filed in support of Uhlir's motion indicates it contained testimony intrinsic to jury deliberations and therefore was prohibited from judicial inquiry by SDCL 19–14–7 as being a "statement occurring during the course of the jury's deliberations." We noted in *Shamburger* that liberalization of this rule would weaken the jury system, not improve it.

'There is little doubt that post-verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allega-tions of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict seriously disrupt the finality of the process.'

*Shamburger*, 418 N.W.2d at 304 (quoting *Tanner v. United States*, 483 U.S. 107, 120, 107 S.Ct. 2739, 2747, 97 L.Ed.2d 90, 106 (1987)). In *Tanner*, the United States Supreme Court further noted "the community's trust in a system that relies on the decisions of laypeople would ... be undermined by a barrage of postverdict scrutiny of juror conduct." *Tanner*, 483 U.S. at 121, 107 S.Ct. at 2748, 97 L.Ed.2d at 106. *See* Note, *Public Disclosures of Jury Deliberations*, 96 HarvLRev 886, 888–92 (1983).

[¶ 18] After reviewing the record, we determine the court erred in granting the motion for a new trial. We reverse the trial court's order in this regard. Our decision makes the consideration of remaining issues on appeal moot.

[¶ 19] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.