1998 SD 5

**Mary SCHMIDT, Individually and as Personal Representative of the Estate of Clifford Schmidt, Deceased, and Rosen'S Diversified, Inc., Plaintiffs and Appellants,**

v.

**Merle Douglas ROYER, Defendant and Appellee.**

**No. 19949.**

Supreme Court of South Dakota.

Argued Oct. 22, 1997.

Decided Jan. 14, 1998.

Michael L. Wagner of Wheeler Wolf Law Firm, Bismarck, ND, Thomas M. Frankman of Davenport, Evans, Hurwitz & Smith, Sioux Falls, and Jeff Rotering, Hettinger, ND, for plaintiffs and appellants.

Donald R. Shultz, Steven J. Oberg of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Wife of man killed in motor vehicle accident appeals the denial of her motions for new trial and judgment notwithstanding the verdict after jury found for defendant in wrongful death action. She claims the trial court erred by refusing to allow (1) cross-examination pertaining to statutory minimum braking requirements, (2) a jury instruction thereon, and (3) a jury instruction on the "left-turn" law. She also claims that defendant's negligence is more than slight and that his counterclaim should be dismissed as a matter of law. Defendant argues this appeal should be dismissed for lack of jurisdiction, arguing that the motion for new trial was not timely ruled upon. We hold the appeal was timely and reverse and remand for a new trial on (1).

## FACTS

[¶ 2.] On August 20, 1991, Clifford Schmidt (Clifford) was driving a one-ton truck east of Sturgis on Highway 34. On that date, the two-lane highway had a signed speed limit of 55 m.p.h. Merle Royer was traveling behind Clifford in the same eastbound lane, driving a 1973 Peterbilt truck pulling a loaded 42-foot oil tanker and a 25-foot pup trailer. Royer's vehicle measured a total of 81 feet and weighed approximately 112,000 pounds.

[¶ 3.] Royer testified that after following Clifford for about four and a half miles, he noticed him pull onto the right, or south, shoulder of the road. Clifford then pulled even further off the road onto a gravel turn-out, which formed an approach for a rural mailbox. Assuming Clifford intended to stop, Royer pulled into the westbound lane in order to pass with ample room. According to Royer, Clifford turned left from the shoulder of the road; Royer's vehicle struck Clifford's truck at the intersection of a gravel road on the north side of the highway. Clifford was killed instantly.

[¶ 4.] Clifford's wife (Schmidt) sued Royer, claiming he was negligent in causing the accident which killed her husband. Clifford's employer also sued for the damage done to its truck. Royer filed a counterclaim for his damages, contending that Clifford was the negligent driver.

[¶ 5.] The case proceeded to jury trial, where each side employed an accident reconstruction expert to testify. Schmidt's expert, Floyd Denman Lee (Lee), formed an opinion on Royer's speed by assuming that his vehicle was in compliance with minimum "braking force" requirements provided in state and federal statutes and regulations. Lee estimated that Royer was traveling at approximately 73 m.p.h. when he applied his brakes. He concluded that the accident was caused by "excessive speed on the part of the semi."

[¶ 6.] Royer's expert, John Daily (Daily), testified that Royer was traveling at around 58 m.p.h. When Daily testified that he was basing his opinion on a braking force percentage different than that provided by law, Schmidt attempted to cross-examine him with the statutes and regulations. She asked the trial court to take judicial notice of the statutes; upon Royer's objection, the trial court refused and also prevented Schmidt from using the statutes for cross-examination.

[¶ 7.] Schmidt argues the significance of the statutes, and the corresponding speed determination, is that Royer's excessive speed must have caused the accident. Her expert testified that if Royer was traveling at a reduced speed, Clifford, traveling at ap-

proximately 10–15 m.p.h., would have cleared the road before Royer reached the site of the accident. Therefore, she argues, Royer's negligence was more than slight and his counterclaim should be dismissed as a matter of law. Royer, on the other hand, claims the trial court properly excluded the statutes and regulations because their introduction was merely a ploy to interject a new theory of negligence into the case (i.e., bad brakes).

[¶ 8.] The trial court rejected Schmidt's jury instruction pertaining to these statutes, as well as her proposed instruction on the left-turn law. The jury found for Royer, awarding $48,000 in damages. Schmidt appeals.

### STANDARD OF REVIEW

[¶ 9.] Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this court will not disturb the trial court's decision absent a clear showing of abuse of discretion. *Tunender v. Minnaert*, 1997 SD 62, ¶ 9, 563 N.W.2d 849, 851 (citation omitted). Likewise, evidentiary rulings made by the trial court are presumed correct and are reviewed under an abuse of discretion standard. *State v. Goodroad*, 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (citing *State v. Oster*, 495 N.W.2d 305, 309 (S.D.1993)). Under this standard, "not only must error be demonstrated, but it must also be shown to be prejudicial error." *State ex rel. Dep't of Transp. v. Spiry*, 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263 (quoting *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D. 1976)). "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Goodroad*, 1997 SD 46 at ¶ 9, 563 N.W.2d at 129 (citing

*State v. Rufener*, 392 N.W.2d 424, 426 (S.D. 1986)).

[¶ 10.] Questions of law are reviewed de novo with no deference given to the trial court. *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771. "Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury. Error is not reversible unless it is prejudicial." *Kuper v. Lincoln–Union Elec. Co.*, 1996 SD 145, ¶ 32, 557 N.W.2d 748, 758 (citation omitted).

[¶ 11.] **1. WHETHER THE APPEAL WAS TIMELY.**

[¶ 12.] A party seeking a new trial must bring a motion in accordance with SDCL 15–6–59(b), which provides:

> The motion for a new trial stating the grounds thereof shall be served and filed not later than ten days after the notice of entry of the judgment.
>
> The court shall make and file the order granting or denying such new trial within twenty days after the service and filing of such motion, unless for good cause shown, the court files an order within said twenty days extending the time for entering such order. If a motion for new trial has not been determined by the court and no order has been entered by the court extending the time for such ruling within twenty days from the date of service and filing of such motion, it shall be deemed denied.

Notice of entry of judgment was filed September 13, 1996. It is undisputed that Schmidt timely filed her motion for new trial on September 25, 1996.[1] The twenty-day requirement set out in SDCL 15–6–59(b) began to run on September 26, 1996, the first day after the motion was both served and filed,[2] and in the absence of an order extending the time for the court's ruling on her

---

1. This takes into account SDCL 15–6–6(e):

   Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him, or whenever such service is required to be made a prescribed period before a specified event, and the notice or paper is served by mail, three days shall be added to the prescribed period. Service by facsimile transmission shall not be

deemed service by mail for purposes of this section.

2. SDCL 15–6–6(a) provides, in part:

   In computing any period of time prescribed or allowed by this chapter, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

motion, the last date the court could have ruled on the motion was October 15, 1996. Since the court did not file its denial of the motion for new trial or judgment notwithstanding the verdict until November 18, 1996, we must determine whether the trial court retained jurisdiction by extending the time to make that ruling.

[¶ 13.] Whether the ruling was timely determines whether the appeal was timely. At the time the appeal was filed, SDCL 15–26A–6 (Supp.1996) provided in part:

An appeal from the judgment must be taken within sixty days after the judgment shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party.

. . .

The running of the time for filing a notice of appeal is terminated as to all parties by a timely motion filed in the circuit court by any party pursuant to § 15–6–59 . . . and the full time for appeal fixed by this section commences to run and is to be computed from the attestation and filing of an order made pursuant to such motion or if the circuit court fails to take action on such motion or fails to enter an order extending the time for taking action on such motion within the time prescribed, then the date shall be computed from the date on which the time for action by the circuit court expires.

If the trial court timely denied the motion on November 18, 1996, then Schmidt's January 17, 1997 notice of appeal was timely filed within the statutory sixty days. However, if the trial court lost jurisdiction to rule on the motion by not "extending the time for such ruling" (SDCL 15–6–59(b)), the sixty days began to run from October 15, 1996. In the latter instance, the last day Schmidt could have timely filed her notice of appeal was December 16, 1996 and this appeal would be dismissed for lack of jurisdiction. *See, e.g., State v. Waters*, 472 N.W.2d 524 (S.D.1991)

(dismissing for lack of subject matter jurisdiction due to State's failure to timely file notice of appeal).

[¶ 14.] On September 23, 1996, Schmidt's attorney sent a letter to the trial judge with copies to, among others, Royer's counsel, stating:

I filed a motion for a new trial along with an alternative motion for judgment n.o.v. with regard to the above-entitled action. In looking at 15–6–59(b) and (c), as well as *Rosenberg v. Mosher*, 331 N.W.2d 79 (S.D. 1983), it appears the court is to set a hearing on the matter. I contacted the clerk's office for a hearing date and the earliest you were available was November 8, 1996 at 11:30 a.m. I reserved that date but will not send out notice of the hearing since it appears that under 15–6–59(c) you are to fix the time and date of the hearing. If you wish for me to notice the hearing for November 8, please let me know and I will promptly do so.

Also, it appears from the *Mosher* case that the 20 day deadline imposed upon the court runs from the date of the hearing. Thus the motion will not be deemed denied until after a hearing has taken place.[3] If you interpret the law otherwise, please let me know. Of course the reason this is important is knowing the deadline for filing an appeal.

The trial court judge responded and faxed a letter to all counsel dated September 25, 1996:

Receipt is acknowledged of your letter. . . . You can go ahead and set it down for November 8, 1996 at the hour of 11:30 a.m. and you can send out a Notice of Hearing for that time.

Royer briefed and argued the motion and participated in the November 8 hearing without raising an objection to its timeliness.

[¶ 15.] This court raised the jurisdictional issue sua sponte and ordered Schmidt to

---

**3.** This is an accurate interpretation of *Rosenberg v. Mosher*. However, that case preceded amendment to SDCL 15–6–59(b). See *Schneider v. Yellow Wolf*, 480 N.W.2d 767, 770 n. 2 (S.D. 1992):

Some practitioners may be confused by the annotation under SDCL 15–6–59(b) to *Rosen-*

*berg v. Mosher*, 331 N.W.2d 79 (SD 1983). That case was based on the former version of that statute but was not handed down until March 16, 1983. We note for the benefit of practitioners that Rosenberg does not state the standards set forth under current statutes.

show cause why the appeal should not be dismissed. Schmidt responded, arguing that the judge's letter operated as SDCL 15–6–59(b)'s "order extending the time for taking action on such motion within twenty days[,]" and that both parties and the trial court substantially complied with SDCL 15–6–59(b). Royer disagreed, claiming the letter was not an "order" and even assuming it was, it was not "entered" as required by the statute. After receiving the parties' responses, this court entered an order on February 13, 1997 deferring this issue "until the matter is considered on the merits."

[¶ 16.] We recently decided a case on its merits despite the fact that the new trial motion hearing was held outside the twenty days. *See Tunender*, 1997 SD 62, 563 N.W.2d 849. While there are undeniable similarities between this case and *Tunender*,[4] this case presents an even more compelling reason for concluding that the trial court retained jurisdiction to rule on the motion. Here, we have a letter from the judge expressly approving a hearing on a date clearly beyond the twenty-day limitation. The question is whether this letter satisfies SDCL 15–6–59(b)'s requirement that the court file "an order within said twenty days extending the time for entering such order." Royer cites authority from other jurisdictions in support of his argument that the letter does not constitute an order. However, we need look no further than our own statutes for the definition of "order". SDCL 15–6–54(a) provides in part:

> Every direction of a court or judge, made *or* entered in writing and not included in a judgment, is denominated an order.

(Emphasis added).

[¶ 17.] Similar questions were raised in *Uhlir v. Webb*, 1996 SD 5, 541 N.W.2d 738.

In *Uhlir*, the trial court orally granted a new trial at the conclusion of the motion hearing, which was held within the twenty days. However, the written order was not signed until after the twenty days elapsed. We held that the oral ruling satisfied the requirements of SDCL 15–6–59(b). *Id.* at ¶ 12, 541 N.W.2d at 740.

[¶ 18.] If an *oral* ruling granting a new trial satisfies the requirement that "[t]he court shall make and *file* the *order* granting or denying such new trial within twenty days ..." (SDCL 15–6–59(b); emphasis added), then a *written* direction to set the hearing outside the twenty days satisfies the requirement that the court "[file][5] an order within said twenty days extending the time for entering such order." *Id.* The "good cause" requirement for an extension is met when the trial judge is unavailable for a hearing date within the statutory twenty days. Furthermore, SDCL 15–6–59(c) provides, in part, that "the court shall by order fix the time and place for hearing [of motion for new trial]...." Clearly this letter satisfied the order requirement in this subdivision. The same result should obtain under another subdivision of the same statute. Therefore, both the trial court's ruling and the appeal therefrom were timely.

[¶ 19.] 2. **WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO PERMIT CROSS-EXAMINATION AND A JURY INSTRUCTION PERTAINING TO THE BRAKING FORCE STATUTES AND REGULATIONS.**

### *Cross-examination*

[¶ 20.] Schmidt argues that she should have been allowed to cross-examine Daily with SDCL 32–18–8, which provides in part:

---

**4.** For example, in both cases, the party moving for new trial acted within the twenty-day time limit in securing the first available hearing date; the hearing date was scheduled outside the twenty days; the non-moving party was served notice of the hearing date within the twenty days; and the non-moving party briefed, participated, and argued at the hearing notwithstanding that the twenty days had expired. In *Tunender*, we held that since the non-moving party requested a continuance (which resulted in the hearing being scheduled outside the twenty days), participated in the hearing, and *then* raised the limitations defense, she "should not be allowed to raise this

[timeliness] issue when it was to accommodate her that Tunender agreed to the extension." 1997 SD 62 at ¶ 14, 563 N.W.2d at 852.

**5.** The fact that the letter was not filed was apparently an oversight by the clerk of the circuit court, as that office filed it promptly upon Schmidt's request. *See Uhlir*, 1996 SD 5 at ¶ 12, 541 N.W.2d at 740 ("[A] clerical error beyond the control of the party and his or her attorney should not result in a denial of a motion that has already been orally granted by the trial court.").

Every motor vehicle described in § 32–18–1 and combination of vehicles, at all times and under all conditions of loading, upon application of the service brake, shall be capable of:

(1) Developing a braking force that is not less than the percentage of its gross weight tabulated herein for its classification;

. . .

| 1<br>Classification of Vehicles | 2<br>Braking force as a percentage<br>of gross vehicle or combination<br>weight |
|---|---|
| . . . | . . . |
| D  All other vehicles and<br>combinations of vehicles | 43.5% |

A violation of this section is a Class 2 misdemeanor.

*See also* ARSD 61:23:01:01:

The motor carrier safety regulations adopted by the U.S. Department of Transportation, 49 CFR 390–397 (October 31, 1983) are the rules of the South Dakota Department of Commerce and Regulation to the extent authorized by SDCL 49–28A–2 for the regulation of motor carrier safety over the highways of the state of South Dakota. The rules govern the qualifications of drivers; driving of motor vehicles; parts and accessories necessary for safe operation; notification and reporting of accidents; hours of service of drivers; and inspection, repair, and maintenance of vehicles. The rules also govern the driving and parking rules for the transportation of hazardous materials.

The Code of Federal Regulations referred to by ARSD 61:23:01:01 provides for an identical braking force percentage as SDCL 32–18–8. *See* 49 CFR § 393.52, at 709–10 (1996).

▆▆ [¶ 21.] The trial court ruled incorrectly that these laws did not apply in this case. The braking force percentage of 43.5% for a vehicle such as Royer's was enacted by statute in 1967. *See* 1967 S.D.Sess.Laws, ch. 197 § 2, at 286–87. Furthermore, the statute does not limit the braking force percentage to manufacturers and sellers to the exclusion of operators, as the trial court apparently concluded. *See* SDCL 32–18–1:

*Every motor vehicle,* as defined by subdivision (15) of § 32–14–1 and every trailer, semitrailer and pole trailer manufactured or sold in this state, and any combination of such vehicles *operating upon a highway within this state* shall be equipped with brakes in compliance with the requirements of this chapter. A violation of this section is a Class 2 misdemeanor.

(Emphasis added).

▆▆ [¶ 22.] Schmidt should have been allowed to impeach Daily with the statutes and regulations.[6] Daily's use of the braking force percentage of .24 to estimate Royer's speed is clearly error. The trial court erred as a matter of law in ruling the statutes and regulations did not apply to Royer's vehicle. Therefore, we must determine if that error was prejudicial. Prejudicial error is "that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it." *Spiry,* 1996 SD 14 at ¶ 11, 543 N.W.2d at 263 (quoting *K & E Land & Cattle, Inc. v. Mayer,* 330 N.W.2d 529, 533 (S.D.1983)).

[¶ 23.] The two experts offered conflicting testimony regarding the speed of Royer's vehicle. Lee estimated Royer's speed at 73 m.p.h. by applying the legal minimum braking force percentage. Daily applied a number which has no basis in the statutes or regulations. He testified at trial that he arrived at .24 as follows:

A: Okay, again kind of recapitulating what I saw there, I went over the evidence that I could see, you know, concerning the tire marks, looked at the percentage of braking, and I thought that probably the

---

6.  Additionally, the trial court should have taken judicial notice of the applicable contents of the Federal Register. *See* 44 U.S.C. § 1507 (1991) ("The contents of the Federal Register shall be judicially noticed . . . ."); *see also Wei v. Robinson,* 246 F.2d 739, 743 (7thCir.), *cert. denied,* 355 U.S. 879, 78 S.Ct. 144, 2 L.Ed.2d 109 (1957) ("Contents of the Federal Register and of the Code of Federal Regulations are prima facie evidence of the original text and are required to be judicially noticed."); *accord Associated East Mortgage Co. v. Young,* 163 N.J.Super. 315, 394 A.2d 899, 902 (1978) ("Federal laws and regulations are binding on state courts and are subject to their judicial notice.") (collecting cases).

percentage of braking for that combination was around 40 percent. All right, then that's 40 percent of what the road is capable of, not of the weight of the vehicle.

Okay, and the road, I talked to Trooper Selves about it because he's done a lot of tests on your South Dakota roads here, and I believe that a full friction value for that road would be around a .6. And so then multiply .6 times .4 and come up with .24. So that—that would be my overall drag factor for that skidding portion there.

. . . .

Q: Okay. Did you look at the law?

A: Only in passing. . . . I don't remember all of what it said. I do know that it said something about braking on the public roads, and I don't remember what the other verbiage is. If you have a copy of it perhaps I could look at it.[7]

At this point Royer objected, putting an end to that line of questioning.

[¶ 24.] The jury was allowed to weigh the experts' testimony, and apparently believe Daily, without knowing that 1) there was a statutory minimum braking requirement, and 2) Daily was unaware of that law. *Cf. LDL Cattle Co., Inc. v. Guetter,* 1996 SD 22, ¶ 22, 544 N.W.2d 523, 528 ("The value of an expert's opinion is no better than the facts upon which it is based. Such testimony proves nothing if its factual basis is not true[.]"); *see also Podio v. American Colloid Co.,* 83 S.D. 528, 532, 162 N.W.2d 385, 387 (1968) ("Obviously [an expert's] opinion has no probative force unless the premises upon which it is based are shown to be true.").

[¶ 25.]Both experts employed the same "slide-to-stop" equation,[8] each applying a different braking force percentage:

$$S = \text{the square root of } 30 \cdot (d \cdot f)$$

$$S = \text{speed of vehicle}$$

$$d = \text{distance of skid marks (feet)}$$

$$f = \text{braking force percentage}$$

Here, .24 is only 55% of the required braking force percentage and produces a substantial underestimation of the speed of Royer's vehicle. Application of the legal braking force percentage produces one of two possible conclusions:

1) Royer was speeding. As Lee testified, application of .435 indicates a speed of approximately 73 m.p.h., or

2) Royer's brakes were substandard. *Daily* even testified that if one applied the .435 braking force, a vehicle such as Royer's traveling 55 m.p.h. would stop after 232 feet. In fact, Royer's vehicle traveled 375 feet before stopping.[9]

Therefore, the jury was misled to the prejudice of Schmidt.

[¶ 26.] If the statutory braking force percentage had been submitted to the jury, it is probable that it would have reached a different verdict. As it stands now, Royer has a judgment of $48,000. If the jury had been presented with facts and law suggesting Royer's negligence, it is probable it would have found, at a minimum, both drivers negligent, and awarded nothing to each. Such a probability constitutes prejudicial error which "must have produced some effect upon the final result and affected rights of the party assigning it." *Spiry,* 1996 SD 14 at ¶ 11, 543 N.W.2d at 263. Under our standard of review, that warrants a new trial.[10]

---

7. The statutory minimum braking force percentage was raised by Schmidt as early as Daily's deposition, although Royer claims to have been caught unaware by its introduction during cross-examination of Daily at trial.

8. Royer makes much of the fact that in a separate gear ratio test, Daily established a speed of 58 m.p.h. In his deposition, Daily testified that he did not see the transmission but was relying upon second-hand information that it was frozen in fourteenth gear following the accident. Royer is the only one who testified to this fact. Schmidt argues that the gear ratio analysis is based upon self-serving testimony and does not

enable an objective test such as that provided by the slide-to-stop equation.

9. Schmidt maintains that she is not attempting to introduce a new "bad brakes" theory. On the contrary, she contends the brakes were in working order and that Royer was exceeding the speed limit.

10. The trial court's reliance on the doctrine of "legal excuse" in denying the motion for new trial or judgment notwithstanding the verdict is somewhat puzzling. We note that legal excuse was never raised or argued by Royer. During the motions hearing, the court mentioned *Albers*

### Jury Instruction

[¶ 27.] Schmidt argues that the jury should have received the following instruction:

> A statute in this state provides:
>
> All trucks operating upon a highway within this state must have a braking force, as a percentage of gross vehicle weight, of at least 43.5%.
>
> This statute sets the standard of care of the ordinarily careful and prudent person. If you find Merle Douglas Royer violated it, such violation is negligence.

[¶ 28.] While this instruction would correctly allow the factfinder to determine whether Royer breached a statutory duty, *Thompson v. Summers,* 1997 SD 103, ¶ 18, 567 N.W.2d 387, 394, it does not go far enough. Violation of a statute "alone is not sufficient to render them liable to the plaintiff. Before they may be held to respond in damages it must further appear that their violation of the duty placed on them by this rule was [a] proximate cause of plaintiff's injury. The burden of establishing this is on the plaintiff." *Id.* (quoting *Blakey v. Boos,* 83 S.D. 1, 8, 153 N.W.2d 305, 309 (1967)). Therefore, this instruction was not proper because it did not contain an appropriate proximate cause instruction.

[¶ 29.] **3. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING THE JURY INSTRUCTION CONCERNING THE "LEFT–TURN" LAW.**

[¶ 30.] Schmidt argues the trial court erred by refusing to submit the following instruction:

> Before turning on a public highway, and while turning, a motorist must exercise due care under the circumstances to see that the turning movement can be made with reasonable safety to himself and others who might be affected thereby.
>
> A driver who undertakes a left turn has the right to take it for granted in the absence of notice to the contrary that oth-

er motorists will maintain a proper lookout, drive at a lawful speed, and otherwise exercise due care to avoid collision with the turning vehicle.

(Citing *Barnhart v. Ahlers,* 79 S.D. 186, 110 N.W.2d 125 (1961)). In *Barnhart,* the plaintiff was making a left turn when his car was struck by a motorist traveling in the opposite direction. The jury found for the plaintiff and the trial court granted defendant's motion for judgment notwithstanding the verdict. This court reversed, ruling that the question of each driver's negligence was properly submitted to the jury. The plaintiff established that he used a hand signal to indicate a planned left turn, which was relevant to this court's observation that the defendant may have been negligent in failing to see the signal. 79 S.D. at 190–91, 110 N.W.2d at 127–28.

[¶ 31.] Here, Royer testified that Clifford neither engaged his left turn signal, nor employed a hand signal to indicate his intention. The unrefuted evidence supports Royer's version, i.e., that Clifford unexpectedly turned left from the *shoulder* of the road, *not* the driving lane, without signaling, and further, that Royer's vehicle was within view at the time. Only a motorist who correctly maneuvers a left turn is entitled to this instruction. *See* S.D. Pattern Jury Instructions (Civil) § 12–06:

> A person who is exercising ordinary care has a right to assume that others will perform their duty and obey the law. Unless there is reasonable cause for thinking otherwise, people can assume that they are not exposed to danger from another person's violation of the law or duty of care.

*See also* SDCL 32–26–18:

> *The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle.* . . . A violation of this section is a Class 2 misdemeanor.

(Emphasis added); *see also* SDCL 32–26–22:

> The driver of any vehicle *upon a highway* before starting, stopping, or turning from

---

*v. Ottenbacher,* 79 S.D. 637, 116 N.W.2d 529 (1962), and *Dartt v. Berghorst,* 484 N.W.2d 891 (S.D.1992). Even if Royer did defend on the basis that there was a breach under circum-

stances excusing a violation, he would bear the burden of proving legal excuse, *Dartt,* 484 N.W.2d at 894, and it would present a fact question for the jury. *Id.* at 896.

a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and *whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in § 32–26–23 plainly visible to the driver of such other vehicle of the intention to make such movement.* A violation of this section is a Class 2 misdemeanor.

(Emphasis added). The evidence did not support the proposed instruction and the trial court did not err in refusing it.

 [¶ 32.] **4. WHETHER ROYER'S COUNTERCLAIM SHOULD BE DISMISSED BASED ON HIS NEGLIGENCE.**

[¶ 33.] If both parties were negligent in causing this accident, either may still recover if his negligence was slight in comparison with the negligence of the other. *See* SDCL 20–9–2:

> In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

Under this statute, the plaintiff's negligence is compared with the negligence of the defendant, not with "the ordinarily prudent person." *Wood v. City of Crooks,* 1997 SD 20, ¶ 2, 559 N.W.2d 558, 560 (citing *Musilek v. Stober,* 434 N.W.2d 765, 768 (S.D.1989)).

[¶ 34.] In some cases, whether one's contributory negligence was more than slight may be decided as a matter of law. *See Lovell v. Oahe Elec. Coop.,* 382 N.W.2d 396, 399 (S.D.1986) (citing *Starnes v. Stofferahn,* 83 S.D. 424, 432–33, 160 N.W.2d 421, 426 (1968)). However, "[i]t is only when the facts show beyond any dispute that plaintiff has committed negligence more than 'slight,' that it is appropriate for the circuit court and this court to hold, as a matter of law, for a negligent defendant." *Westover v. East River Elec. Power Coop. Inc.,* 488 N.W.2d 892, 896 (S.D.1992) (citation omitted). Here, the facts are in dispute whether either driver "committed negligence more than slight." Therefore, whether either driver was contributorily negligent, and if so, the degree of such negligence is a question of fact properly submitted to the jury. *Wood,* 1997 SD 20 at ¶ 3, 559 N.W.2d at 560 (citing *Theunissen v. Brisky,* 438 N.W.2d 221, 223–24 (S.D.1989)).

[¶ 35.] Accordingly, we reverse and remand for new trial to provide the jury the tools to make that determination.

[¶ 36.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

