#26088-aff in pt, rev in pt & rem-JKK

**2012 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOHN CHRISTIAN WALTER,                    Plaintiff and Appellee,

    v.

JOHN EDWARD FUKS,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GLEN W. ENG
Judge

\* \* \* \*

SCOTT G. HOY
BRAM WEIDENAAR
JAMES L. HOY of
Hoy Trial Lawyers, LLC
Sioux Falls, South Dakota                    Attorneys for plaintiff and
    appellee.


GARY D. JENSEN
JESSICA L. LARSON of
Beardsley, Jensen, & Von Wald, LLC
Rapid City, South Dakota                    Attorneys for defendant and
    appellant.

\* \* \* \*

ARGUED ON MARCH 20, 2012

OPINION FILED **08/29/12**

#26088

KONENKAMP, Justice

[¶1.]    While driving a farm tractor down a county road, defendant turned unexpectedly and struck plaintiff's motorcycle as plaintiff was trying to pass on the right.  At trial, defendant asserted that plaintiff was driving under the influence of alcohol at the time and was barred from recovering based on contributory negligence and assumption of the risk.  A jury returned a verdict for plaintiff.  On appeal, we conclude that the circuit court erroneously instructed the jury on the presumptions applicable only to criminal prosecutions for DUI.  Also, plaintiff's repeated violations of the court's in limine order, improperly disclosing that plaintiff was not prosecuted for DUI, unfairly suggested to the jury that law enforcement officials had effectively resolved the issue whether plaintiff was driving under the influence.

## Background

[¶2.]    On May 19, 2009, John Walter and Dale Morck drove their motorcycles in and around the Yankton and Springfield areas of South Dakota.  They stopped at various bars and got their books stamped as part of a summer-long poker run.  Their first stop was at a bar outside of Yankton around 2:25 p.m.  There, they each consumed one beer.  Walter recalled that over the course of the next two hours, he and Morck stopped at three more establishments, and he drank a little over three more beers.  Morck, on the other hand, remembered stopping at a total of five bars and that he and Walter consumed about six beers each.  They left the last bar around 4:30 p.m. to head back to Springfield.

[¶3.] On their way home, Walter and Morck proceeded north on Highway 81. They turned west onto 306th Street, a paved county road, and headed toward Tabor. Shortly afterwards, Walter and Morck noticed a tractor on the road, heading west. John Fuks (now deceased) was driving his tractor five to ten miles per hour and was on his way to a field to help a friend. Walter and Morck slowed as they neared the tractor. What happened next is disputed. Walter claimed that Fuks drove his tractor from the westbound lane to the eastbound lane and stopped off the road, momentarily. Fuks maintained that he crossed the centerline, never stopped his tractor, and drove partially in the eastbound lane. He intended to make a left-hand turn into a field approach, and to do so successfully, he swung the front of his tractor to the right just before turning. Morck said Fuks's tractor crossed the centerline and was partially in the eastbound lane when Fuks suddenly veered right. What happened thereafter is undisputed. When Fuks swung the front of his tractor to the right, the attached bucket entered the westbound lane, struck Walter's motorcycle, and sent Walter into the ditch.

[¶4.] After the accident, Fuks drove his tractor back to his farm, a short distance away. While he was gone, an ambulance arrived. Teresa Holland, an EMT from Tabor, tended to Walter. She found him with significant injuries, but she smelled no odor of an alcoholic beverage. Yankton County Deputy Sheriff Dan Christianson also arrived on the scene. By this time, Fuks had returned. Officer Christianson took statements from Fuks and Morck. He also issued Morck a preliminary breath test for alcohol, which indicated a blood alcohol content (BAC) of

.055%. Because Morck's BAC was below the legal limit of .08%, Officer Christianson told Morck he was free to leave.

[¶5.] Walter was taken by helicopter to Sioux Falls for treatment. There, a blood sample was drawn at 6:25 p.m. The test showed a BAC of .058%. A second blood sample was drawn around 7:38 p.m., at the request of investigating officers, and was forwarded to the State Chemical Laboratory in Pierre. Roger Mathison, a chemist for the State, determined Walter's BAC to be .042%. By extrapolation, Mathison concluded that at the time of the accident, Walter's BAC would have been .087%.

[¶6.] As a result of the accident, Walter sustained compound fractures of his left elbow, pelvis, and knee, requiring multiple surgeries. He missed eight months of work as a correctional officer at the Mike Durfee State Prison. In the end, he sustained a 9% whole person impairment rating and incurred $160,745 in medically-related expenses.

[¶7.] Walter sued Fuks for negligence. Fuks answered denying negligence and asserting the affirmative defenses of contributory negligence and assumption of the risk. He later moved for summary judgment asserting that Walter was legally under the influence of an alcoholic beverage at the time of the accident, making him contributorily negligent more than slight. As support, Fuks offered an affidavit from Mathison that Walter's BAC at the time of the accident was .087%, above the legal limit of .08%. The circuit court denied the motion.

[¶8.] Among other pretrial motions, Fuks moved to prevent Walter from eliciting testimony or offering evidence that Walter was not criminally prosecuted

as a result of his BAC at the time of the accident. The court granted the motion, declaring that no questions could be asked "regarding any citation, charge of a criminal nature that was — was brought or was not brought." But later during a deposition, counsel for Walter asked a witness if he was aware if Walter "was ever arrested" for a DUI. When Fuks's counsel objected, saying that the question violated the court's in limine ruling, Walter's counsel responded that "we were instructed not to talk about the charges and I'm talking about arrest by a police officer and I think that's different[.]" Consequently, Fuks made another motion in limine, which the court granted, saying, "The court is going to limit any questions regarding arrests, citations, as previously ordered." Counsel were instructed to approach the bench if they believed the other side had opened the door for questioning related to any criminal prosecution.

[¶9.] A jury trial was held in May 2011. Fuks admitted negligence, leaving for the jury the issues of causation, contributory negligence, assumption of the risk, and damages. To prove Walter was under the influence of an alcoholic beverage, Fuks offered expert testimony that based on Walter's .087% BAC at the time of the accident, Walter would have experienced a "feeling of euphoria, of well-being, everything is good and it's going to stay good, going to charge through, don't really stop and think about all the consequences, all the things that could go wrong as you would if you were sober and a sober person may well judge the situation completely differently and might have stopped before the tractor had a chance to turn in on him." Fuks argued that had Walter not been drinking he would have avoided the tractor bucket as Morck was able to do. Walter, on the other hand, presented

evidence that his BAC was .062% at the time of the accident, that no one thought he appeared to be under the influence of alcohol, and that he operated his motorcycle as an ordinary person would have under the circumstances.

[¶10.] The jury found for Walter. By special verdict, it concluded that Fuks's negligence was the legal cause of Walter's injuries, and that Walter was contributorily negligent, but not more than slight. Walter was awarded $520,754.

[¶11.] In his motion for a new trial or judgment as a matter of law, Fuks argued that Walter committed misconduct during the trial when he violated the court's in limine orders. In particular, Fuks alleged that Walter improperly and prejudicially injected issues concerning Fuks's insurance and financial status, as well as Walter's lack of criminal prosecution and his sexual dysfunction. Fuks further asserted that the court abused its discretion when it allowed Walter to examine non-legal experts on the criminal laws related to driving under the influence, and allowed Walter to examine a witness beyond the scope of the prior examination. Finally, Fuks argued that it was improper and prejudicial for the court to instruct the jury on the presumptions applicable to a criminal prosecution for driving under the influence. His motions were denied.

[¶12.] Fuks appeals asserting that (1) Walter committed misconduct during the trial when he improperly injected the issues of insurance, financial status, lack of criminal prosecution, and sexual dysfunction into the trial, (2) the court abused its discretion with certain evidentiary rulings, (3) Instruction 19A on DUI presumptions was improper and prejudicial, and (4) the court erred when it denied his motion for a judgment as a matter of law that Walter was legally under the

influence of alcohol, and therefore, contributorily negligent more than slight. As they are dispositive, we address only the DUI presumptions instruction and the violations of the in limine order regarding lack of prosecution.

### 1. Jury Instruction on DUI Presumptions

[¶13.] Walter requested a jury instruction on the presumptions applicable to criminal prosecutions for driving under the influence. He asked the court to instruct the jury that if a person's BAC is .05% or less, the person is presumed not to be under the influence, and if a person's BAC is more than .05%, but less than .08%, there is no presumption that the person was or was not under the influence of an alcoholic beverage. *See* SDCL 32-23-7. Fuks objected on grounds that the presumptions only apply to criminal prosecutions. In agreeing to give the instruction, the circuit court explained: "I understand that it is normally a criminal presumption, but the court believes that many of the things here are criminal in nature and we give the instruction because that's what the law is." The court also allowed Mathison to testify, over Fuks's objection, about these presumptions.

[¶14.] Fuks relies on *Fossum v. Zurn*, 78 S.D. 260, 272, 100 N.W.2d 805, 811 (1960). There, this Court ruled that the predecessor to SDCL 32-23-7 only applies to criminal prosecutions. Fuks further argues that courts across the nation have limited the application of such criminal statutes to criminal cases. Walter, on the other hand, asserts that since *Fossum*, this Court has incorporated the presumptions in a worker's compensation case and a civil case on punitive damages. *See Therkildsen v. Fisher Beverage*, 1996 S.D. 39, ¶ 12, 545 N.W.2d 834, 837; *Flockhart v. Wyant*, 467 N.W.2d 473, 477 (S.D. 1991). Moreover, Walter argues that

#26088

the statutory presumptions are relevant any time drinking and driving become an issue in a case and a blood test is offered on the question whether a person was under the influence of alcohol.

[¶15.]    Instruction 19A told the jury:

> An analysis of the Plaintiff's blood taken after the accident has been received as evidence. The amount of alcohol in the Plaintiff's blood at the time alleged as shown by chemical analysis may give rise to the following presumptions:
>
> 1. If there was .05 percent or less by weight of alcohol in the defendant's [sic] blood, it shall be presumed that the defendant [sic] was not under the influence of an alcoholic beverage.
>
> 2. If there was in excess of .05 percent, but less than .08 percent by weight of alcohol in the defendant's [sic] blood, such fact shall not give rise to any presumption that the defendant [sic] was or was not under the influence of an alcoholic beverage.
>
> These presumptions created by statute are not conclusive and may be considered in connection with all other evidence submitted in the case.

The wording of this instruction came from SDCL 32-23-7, which begins, "*In any criminal prosecution. . . .*" (Emphasis added.) This statute contains a third presumption that one is presumed to be under the influence when that person's BAC is above .08%, but the circuit court did not include that presumption in Instruction 19A.[1] *See id.*

---

1.    In addition to the presumption instructions, the jury was given the following instructions without objection:

Instruction 19

No person may drive or be in actual or physical control of any vehicle while:

(continued . . .)

-7-

[¶16.] Trial courts have broad discretion in instructing a jury, but their instructions must provide a full and correct statement of the law. *Papke v. Harbert*, 2007 S.D. 87, ¶ 13, 738 N.W.2d 510, 515 (citations omitted). Because Fuks is challenging an instruction, he bears the burden of proving that the instruction was not only erroneous, but also prejudicial. *See id.* (citing *First Premier Bank v. Kolcraft Enter., Inc.*, 2004 S.D. 92, ¶ 40, 686 N.W.2d 430, 448). To be prejudicial, the erroneous instruction must have in all probability produced some effect upon the verdict and be harmful to the substantial rights of a party. *Id.*

[¶17.] We have not previously addressed whether it is proper in a civil case to instruct a jury on the criminal presumptions in SDCL 32-23-7.[2] A review of cases

---

(. . . continued)

> (1) There is 0.08 percent or more by weight of alcohol in that person's blood as shown by chemical analysis of that person's breath, blood, or other bodily substance; or
>
> (2) Under the influence of an alcoholic beverage.
>
> This statute sets the standard of care of a reasonable person. If you find that John Walter violated the statute, such violation is negligence.
>
> Instruction 20
>
> A person is under the influence of an alcoholic beverage when as a result of drinking an alcoholic beverage his physical or mental abilities are impaired to the extent that the person is not able to drive a vehicle in the manner a person of ordinary prudence would drive under the same or similar circumstances.

2. In *Flockhart*, SDCL 32-23-7 was *not* incorporated or otherwise relied upon at the trial level or in deciding the appeal. On appeal, this Court merely used the presumptions to emphasize the undisputed condition of the driver. *See* 467 N.W.2d at 477. While the presumptions of SDCL 32-23-7 were used in *Therkildsen*, the Court made clear its application was limited to the worker's

(continued . . .)

from other jurisdictions reveals that a clear majority of courts hold that such an instruction is improper. *Bach v. Penn Cent. Transp. Co.*, 502 F.2d 1117, 1120 (6th Cir. 1974) (reversible error); *Wilson v. Coston,* 390 S.W.2d 445, 446 (Ark. 1965) (reversible error); *Wood v. Brown*, 201 S.E.2d 225, 228 (N.C. Ct. App. 1973); *Ackerman v. Delcomico*, 486 A.2d 410, 414-15 (Pa. Super. Ct. 1984); *Patton v. Tubbs*, 402 P.2d 355, 356 (Wash. 1965); *Combined Ins. Co. of Am. v. Sinclair*, 584 P.2d 1034, 1047-48 (Wyo. 1978). *But see Divine v. Groshong,* 679 P.2d 700, 708-09 (Kan. 1984). The prevailing reason for rejecting the presumption instruction in civil cases is that the plain language of the presumption statutes refer to criminal prosecutions or criminal cases. Another convincing reason, particularly applicable to this case, is that a BAC should not be considered exclusively. With the presumption instruction, the jury would not need to consider other evidence of impairment showing that a person acted negligently. One of the critical issues here was whether Walter was under the influence of alcohol, a question the jury had to determine from all the evidence, not simply from a series of criminal presumptions.

[¶18.]     In accord with most other jurisdictions, we conclude that our presumptions statute, SDCL 32-23-7, is inapplicable to negligence actions. The statute's language provides for application in "criminal prosecutions." As other courts have declared, such an instruction is an improper comment on the evidence

---

(. . . continued)
   compensation case involving an employee's injury while using a motor
   vehicle. *See* 1996 S.D. 39, ¶ 12, 545 N.W.2d at 837.

and constitutes reversible error.  This instruction was also prejudicial, as it both confused the issues and clouded the burden of proof.

### 2. Violations of In Limine Orders

[¶19.]    Fuks contends that Walter's multiple violations of the court's rulings in limine were prejudicial and denied him a fair trial.  We think the circuit court adequately addressed most of the violations at the time they occurred.  One violation, however, deserves further comment and condemnation.  Walter repeatedly attempted to bring in the fact that he was not charged or prosecuted for DUI.  During Walter's direct examination, his attorney asked whether he had "to answer any questions in any kind of a — other courtroom process?"  Although Fuks's objection was sustained, the jury heard the question.  Then, during Mathison's cross examination, Walter was allowed, over objection, to ask Mathison if he had been "asked by any prosecutor to come and testify," to which Mathison answered, "No."  Mathison was then asked, "Did you tell [counsel] in his deposition that you wouldn't recommend prosecution?"  This was the very subject Walter was instructed not to raise.  Fuks objected before Mathison could answer.  The objection was sustained, and the court instructed the jury to disregard the question.  A motion for mistrial was denied.

[¶20.]    Once highly prejudicial matters are brought before the jury, objections and instructions to disregard cannot always dispel the harmful effect.  *Kjerstad v. Ravellette Publ'ns Inc.*, 517 N.W.2d 419, 427 (S.D. 1994) (citation omitted).  One advantage to a ruling "in limine is not having to object in the jury's presence. . . ."  *Id*. at 427.  In this way, the prejudicial impact from asking questions and making

objections on inadmissible evidence before the jury is alleviated. Under our rules, "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." SDCL 19-9-5 (Rule 103(c)).

[¶21.] Walter was clearly prohibited from broaching, through testimony or otherwise, the fact that he was not charged criminally. By disclosing he was not prosecuted for DUI, he was able to suggest to the jury that law enforcement authorities had effectively resolved the issue whether he was driving under the influence. Counsel for Walter later excused this as merely asking an "inartful question." But this will not do. Litigants and their attorneys bear the responsibility to follow punctiliously a court's in limine orders. Walter also contends that Fuks opened the door to questions about lack of criminal prosecution. Yet Walter was specifically instructed that in such an event he was to approach the bench and ask permission before posing any questions on this forbidden subject. *See Kjerstad*, 517 N.W.2d at 427. That never happened.

[¶22.] We review denials of mistrial and new trial motions for an abuse of discretion. *Schmidt v. Royer*, 1998 S.D. 5, ¶ 9, 574 N.W.2d 618, 621. "[I]ntentional introduction of prejudicial evidence through a violation of [an in limine ruling] can serve as the basis for a new trial." *Loen v. Anderson,* 2005 S.D. 9, ¶ 16, 692 N.W.2d 194, 199 (citing *First Premier Bank,* 2004 S.D. 92, ¶ 6, 686 N.W.2d at 436) (additional citations omitted). For a violation of an in limine order to serve as the basis of a new trial, (1) the order must be specific in its prohibitions, (2) the

violation must be clear, and (3) the violation must be prejudicial. *Kjerstad*, 517 N.W.2d at 426. "Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Id.* (citation omitted). We conclude that the in limine order was specific; in fact, it was given twice. Also the violation was clear. And in all probability it produced some effect upon the jury's verdict and was harmful to Fuks's right to a fair trial. *See id.* Thus, the circuit court abused its discretion in not granting a new trial.

[¶23.] Finally, as to Fuks's claim that he was entitled to a judgment as a matter of law on Walter's contributory negligence, we think the circuit court properly denied the motion because there were factual questions to resolve. We need not address Fuks's remaining issues because we reverse and remand for a new trial, and we trust that based on our decision today and the circuit court's previous rulings, these issues will not arise again.

[¶24.] Affirmed in part, reversed in part, and remanded for a new trial.

[¶25.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.